No. 20-50654

———————————————

# IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

———————————————

RUTH HUGHS,
in her official capacity as the Texas Secretary of State,

*Defendant–Appellant*

*v.*

LINDA JANN LEWIS, MADISON LEE, ELLEN SWEETS, BENNY ALEXANDER, GEORGE MORGAN, VOTO LATINO, TEXAS STATE CONFERENCE OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, AND TEXAS ALLIANCE FOR RETIRED AMERICANS,

*Plaintiffs–Appellees*,

———————————————

On Appeal from the United States District Court
for the Western District of Texas
Civil Action No. 5:20-cv-00577

———————————————

## PLAINTIFFS-APPELLEES' OPPOSITION TO PETITION FOR REHEARING EN BANC

———————————————

Skyler M. Howton
PERKINS COIE LLP
500 North Akard St., Ste. 3300
Dallas, TX 75201-3347
Telephone: (214) 965-7700
Facsimile: (214) 965-7799

Marc E. Elias
Aria C. Branch
Stephanie Command
PERKINS COIE LLP
700 Thirteenth St. NW, Ste. 800
Washington, D.C. 20005-3960

Kevin J. Hamilton
William B. Stafford*
PERKINS COIE LLP
1201 Third Ave., Ste. 4900
Seattle, WA  98101-3099

Gillian Kuhlmann*
PERKINS COIE LLP
1888 Century Park East, Ste. 1700
Century City, CA 90067

Sarah Schirack
PERKINS COIE LLP
1029 W. 3rd Ave., Ste. 300
Anchorage, AK 99517

*Counsel for Plaintiffs-Appellees*
*\*5th Cir. Admission Pending*

No. 20-50654

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

---

RUTH HUGHS,
in her official capacity as the Texas Secretary of State,

*Defendant–Appellant*

*v.*

LINDA JANN LEWIS, MADISON LEE, ELLEN SWEETS, BENNY
ALEXANDER, GEORGE MORGAN, VOTO LATINO, TEXAS STATE
CONFERENCE OF THE NATIONAL ASSOCIATION FOR THE
ADVANCEMENT OF COLORED PEOPLE, AND TEXAS ALLIANCE
FOR RETIRED AMERICANS,

*Plaintiffs–Appellees,*

---

On Appeal from the United States District Court
for the Western District of Texas
Civil Action No. 5:20-cv-00577

---

## CERTIFICATE OF INTERESTED PERSONS

---

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

## CERTIFICATE OF INTERESTED PERSONS
## (continued)

### Plaintiffs-Appellees

1. Linda Jann Lewis
2. Madison Lee
3. Ellen Sweets
4. Benny Alexander
5. George Morgan
6. Voto Latino: no parent corporation or stock.
7. Texas Alliance for Retired Americans: no parent corporation or stock.
8. Texas State Conference of the National Association for the Advancement of Colored People: no parent corporation or stock.

### Counsel for Plaintiffs-Appellees

Skyler M. Howton
PERKINS COIE LLP
500 North Akard St., Ste. 3300
Dallas, TX 75201-3347
Telephone: (214) 965-7700
Facsimile: (214) 965-7799

Marc E. Elias
Aria C. Branch
Stephanie Command
PERKINS COIE LLP
700 Thirteenth St. NW, Ste. 800
Washington, D.C. 20005-3960

Kevin J. Hamilton
William B. Stafford
PERKINS COIE LLP
1201 Third Ave., Ste. 4900
Seattle, WA  98101-3099

## CERTIFICATE OF INTERESTED PERSONS
## (continued)

Gillian Kuhlmann
PERKINS COIE LLP
1888 Century Park East, Ste. 1700
Century City, CA 90067

Sarah Schirack
PERKINS COIE LLP
1029 W. 3rd Ave., Ste. 300
Anchorage, AK 99517

**Defendant-Appellant**

1.    Texas Secretary of State

**Counsel for Defendant-Appellant**

Ken Paxton
Jeffrey C. Mateer
Ryan L. Bangert
Kyle D. Hawkins
Matthew H. Frederick
Todd L. Disher
William T. Thompson
Michael R. Abrams
Kathleen Hunker
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC-009)
Austin, TX 78711-2548
Telephone:    (512) 936-1414
Facsimile:    (512) 936-0545

## CERTIFICATE OF INTERESTED PERSONS
### (continued)

*/s/ Skyler M. Howton*

Skyler M. Howton
PERKINS COIE LLP
500 North Akard St., Suite 3300
Dallas, TX 75201-3347
Telephone: (214) 965-7700
Facsimile: (214) 965-7799

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION.................................................................. 1

STATEMENT OF THE CASE ............................................. 2

ARGUMENT AND AUTHORITIES ....................................... 4

    I.    The Summary Affirmance is uniform with this Court's
        prior decisions and does not present a question of
        exceptional importance. .......................................... 4

        A.    The Summary Affirmance is uniform with
               the Court's prior decisions on the connection
               requirement.......................................................... 4

               1.    This Court held that the Secretary's
                       connection to the Texas Election Code
                       satisfies *Ex parte Young* just four days
                       ago. ................................................. 5

               2.    The Summary Affirmance is uniform
                       with all other Fifth Circuit decisions
                       regarding *Ex parte Young*'s connection
                       requirement.................................... 8

        B.    The Secretary's en banc petition does not
               present a question of exceptional
               importance.......................................................... 12

    II.    There is no unsettled question that warrants rehearing
        en banc regarding the requested injunction........................ 13

CONCLUSION .................................................................. 16

CERTIFICATE OF SERVICE............................................... 19

CERTIFICATE OF COMPLIANCE........................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Air Evac EMS, Inc. v. Tex., Dep't of Ins., Div. of
    Workers' Comp.*,
    851 F.3d 507 (5th Cir. 2017)............................................8, 9

*City of Austin v. Paxton*,
    943 F.3d 993 (5th Cir. 2019)....................................8, 9, 11

*Dolgencorp, Inc. v. Miss. Band of Choctaw
    Indians*,
    746 F.3d 588 (5th Cir. 2014)..............................................12

*Edelman v. Jordan*,
    415 U.S. 651 (1974)..............................................................15

*Ex parte Young*,
    209 U.S. 123 (1908)..................................................passim

*Green Valley Special Util. Dist. v. City of Schertz,
    Tex.*,
    No. 18-51092, 2020 WL 4557844 (5th Cir. Aug.
    7, 2020)....................................................................14, 16

*Hawaii v. Gordon*,
    373 U.S. 57 (1963)..............................................................15

*Jacobson v. Florida Secretary of State*,
    No. 19-14552, 2020 WL 5289377 (11th Cir.
    Sept. 3, 2020) ......................................................................7

*K.P. v. LeBlanc*,
    627 F.3d 115 (5th Cir. 2010)............................................8, 9

*Larson v. Domestic & Foreign Com. Corp.*,
    337 U.S. 682 (1949)..............................................13, 14, 16

*Milliken v. Bradley,*
  433 U.S. 267 (1977) ............................................................ 16

*Nelson v. Univ. of Tex.,*
  535 F.3d 318 (5th Cir. 2008) ............................................ 16

*Saine v. Hosp. Auth. of Hall Cnty.,*
  502 F.2d 1033 (5th Cir. 1974) .......................................... 14

*Texas Democratic Party v. Abbott,*
  No. 20-50407, 2020 WL 5422917 (5th Cir.
  2020) ............................................................................ passim

*Thomas ex rel. D.M.T. v. Sch. Bd. St. Martin Par.,*
  756 F.3d 380 (5th Cir. 2014) ............................................ 16

*Vann v. Kempthorne,*
  534 F.3d 741 (D.C. Cir. 2008) ........................ 13, 14, 15, 16

## STATUTES

Hawaii Statehood Act ............................................................ 15

Tex. Elec. Code § 31.001 ......................................................... 10

Tex. Elec. Code § 31.0003 .................................................. 10, 14

Tex. Elec. Code § 31.005 ......................................................... 11

Tex. Elec. Code § 31.005 ......................................................... 10

Tex. Elec. Code § 86.002 ..................................................... 2, 10

Tex. Elec. Code § 86.006 ........................................................... 2

Tex. Elec. Code § 86.007 ........................................................... 2

Tex. Elec. Code § 87.027 ........................................................... 2

## OTHER AUTHORITIES

11th Amendment ........................................................................ 2

5th Cir. R. 35.1 ...................................................................... 4

5th Cir. R. 35.2 .................................................................... 4, 8

Fed. R. App. P. 35(a) ......................................................... 4, 7, 8

Fed. R. App. P. 35(a)(1) ......................................................... 4

## INTRODUCTION

There is no reason to disturb this Court's summary affirmance of the order denying the Texas Secretary of State's motion to dismiss for sovereign immunity. The Secretary's en banc petition is based on the premise that the outer bounds of *Ex parte Young*'s connection requirement are unsettled. But the specific question here is whether the Secretary has a *sufficient* connection to the Texas Election Code (the "Code") to satisfy *Ex parte Young*. Even during the pendency of this appeal, the Secretary has demonstrated such a connection: she is currently seeking injunctive relief against Harris County for not following her directives on vote-by-mail eligibility. The question of the Secretary's connection to the vote-by-mail laws in Texas is also settled by prior precedent and this Court's September 10 opinion in *Texas Democratic Party v. Abbott*, No. 20-50407, 2020 WL 5422917 ("*TDP*"), which held that the Secretary has a sufficient connection to the mail-in ballot provisions of the Code and, indeed, to the Code writ large. Because the summary affirmance comports with precedent (including a decision issued by this Court just four days ago) and does not present a question of exceptional importance, en banc review is not warranted.

If the Secretary succeeds in running the clock on Plaintiffs' underlying suit on election issues, it would set dangerous precedent inviting defendants to procedurally hamstring time-sensitive efforts to enjoin unconstitutional conduct. This Court should decline to implicitly

sanction the Secretary's gamesmanship and instead let the summary affirmance stand.

## STATEMENT OF THE CASE

This appeal concerns whether the Secretary has sufficient connection to the Code so as to be sued as a defendant in litigation challenging the application of the same without violating the 11th Amendment. Plaintiffs have challenged the application of four provisions of the Code (together, the "Challenged Provisions") that they contend will burden the right to vote in the present pandemic unless enjoined: (1) the requirement that mail ballots be rejected unless postmarked by 7:00 p.m. on election day and *received* no later than 5:00 p.m. the day after the election, Tex. Elec. Code § 86.007; (2) the lack of a cure opportunity for voters whose ballots are erroneously rejected due to a purported signature "mismatch" as identified by untrained elections officials using inconsistent standards, *id.* § 87.027; (3) the criminalization of assisting a voter in returning a mail ballot, *id.* § 86.006; and (4) the requirement that voters pay for postage to return their mail ballots, *id.* § 86.002. ROA.15-56. The Complaint requested that the Challenged Provisions be enjoined, including through an injunction requiring the Secretary (1) to ensure prepaid postage on ballot envelopes, and (2) to "provide voters the opportunity to cure any issues with signature verification before their ballots are rejected." ROA.55-56.

The district court rejected the Secretary's motion to dismiss, and specifically rejected the argument that she lacked sufficient connection to the Challenged Provisions to be sued in this action. On the Secretary's interlocutory appeal to this Court, the merits panel agreed with the district court and summarily affirmed. The Secretary seeks en banc review.

The relevant background is as follows. The Secretary moved to dismiss in early June, in part on the grounds of sovereign immunity. ROA.102-131. Plaintiffs opposed that motion, ROA.137-165, and moved for a preliminary injunction, ROA.236-272. In July, the district court denied the Secretary's motion to dismiss. ROA 656-689. The Secretary waited ten days before filing a notice of interlocutory appeal, continuing to participate in discovery all the while. ROA 690-691. In mid-August, the district court entered an order declining to exercise jurisdiction pending the appeal's resolution. ROA 737-738.

An appeal in the normal course would foreclose Plaintiffs from obtaining relief in November, so Plaintiffs filed an emergency motion for summary affirmance. *See* Emergency Mot. for Summary Affirmance or to Dismiss the Appeal as Frivolous ("Emergency Mot."). On September 4, Judges Dennis, Southwick, and Engelhardt unanimously granted Plaintiffs' motion ("Summary Affirmance"). The Secretary now petitions for en banc reconsideration.

## ARGUMENT AND AUTHORITIES

**I.    The Summary Affirmance is uniform with this Court's prior decisions and does not present a question of exceptional importance.**

Petitions for rehearing en banc must be limited to circumstances in which "(1) en banc consideration is necessary to secure or maintain uniformity of the court's decisions; or (2) the proceeding involves a question of exceptional importance." Fed. R. App. P. 35(a); *see also* 5th Cir. R. 35.2 (en banc petition may only concern arguments that meet Rule 35(a)(1) or (2)). This standard seeks to prevent abuse of the petition process.

The Secretary ignores it, contending instead that en banc reconsideration is warranted because the Summary Affirmance "announces a new rule without addressing unsettled questions of circuit law." Pet. at 6. But an unsettled question of circuit law—particularly one whose settling would not affect the challenged holding—does not satisfy the "rigid standards of [Rule] 35(a)." 5th Cir. R. 35.1. Because the Summary Affirmance comports with this Court's other decisions on the issue and the interlocutory appeal does not involve a question of exceptional importance, the petition should be denied.

**A.    The Summary Affirmance is uniform with the Court's prior decisions on the connection requirement.**

The narrow issue presented is whether the Secretary "bears a sufficient connection to the enforcement of the Code's vote-by mail provisions to satisfy *Ex parte Young*'s 'some connection' requirement."

Order at 2. The Summary Affirmance concludes that the Secretary unquestionably bears a sufficient connection. *Id.* That decision is indisputably consistent with all prior Fifth Circuit opinions. Indeed, this Court's holding in the Summary Affirmance is the *same* decision—concerning the *same* defendant's connection to the *same* Code—reached just four days ago after full briefing on the merits, submission of amici briefs, and oral argument. *See TDP*, 2020 WL 5422917.

> ### 1. This Court held that the Secretary's connection to the Texas Election Code satisfies *Ex parte Young* just four days ago.

On September 10, this Court entered its merits decision in *TDP*, a case in which plaintiffs challenged vote-by-mail eligibility requirements. The Court rejected the Secretary's identical argument that she does not have sufficient connection to the Code to satisfy *Ex parte Young*. It acknowledged that "[t]his circuit has not spoken with conviction about all relevant details of the 'some connection' requirement," noting a plurality opinion suggesting that a defendant must be "specially charged with the duty to enforce the statute and be threatening to exercise that duty." *TDP*, 2020 WL 5422917 at *5 (quoting *Okpalobi v. Foster*, 244 F.3d 405, 414-15 (5th Cir. 2001) (plurality) (quotations omitted)). However, *TDP* said the Court "need not resolve more of the particulars . . . because [the Secretary] falls within the exception" regardless. *Id*.

As the Court explained, *Ex parte Young*'s connection requirement is met when a defendant is "statutorily tasked with enforcing the challenged law" and when there is "some scintilla of 'enforcement' by the relevant state official." *Id.* (quoting *In re Abbott*, 956 F.3d 696, 709 (5th Cir. 2020); *City of Austin v. Paxton*, 943 F.3d 993, 1002 (5th Cir. 2019)). The Court held that the Secretary satisfies both because she has "a close statutory connection to the Texas Election Code," and because the vote-by-mail eligibility requirements—like the Challenged Provisions—"'appl[y] to every election held in the state of Texas,' and fall[] within the Secretary of State's duty to 'obtain and maintain uniformity in the application, operation, and interpretation of' the Texas Election Code." *Id.* at *6 (quoting *OCA-Greater Houston v. Texas*, 867 F.3d 604, 613-14 (5th Cir. 2017)). It held that this more than satisfies the requirement that there be a "scintilla of enforcement." *Id.* (quotations omitted). The Court rejected the Secretary's argument that "*Ex parte Young* cannot apply because there is no action by the Secretary that the court could enjoin," given that she would be compelled to cease enforcing those requirements if the Court held them to be unconstitutional. *Id.* Accordingly, "[t]he Secretary has both a sufficient connection and special relationship to the

Texas Election Code," and "sovereign immunity does not bar suit against the Secretary." *Id.*[1]

Here, the Secretary urges rehearing en banc because there is an unsettled question *related* to the connection requirement. But in *TDP*, this Court decided that the unsettled question—whether a defendant must be "specially charged" to enforce the challenged law in light of a two-decade-old plurality opinion—need not be resolved to conclude that the Secretary's connection to the Code satisfies *Ex parte Young*. *Id.* at *5. The Summary Affirmance tracks that conclusion in *TDP*, which directly resolves the Secretary's interlocutory appeal here.

---

[1] The Secretary attempts to prove her lack of connection to the Challenged Provisions, as she did in *TDP*, by arguing that she takes no action that could be enjoined to remedy Plaintiffs' claims, citing *Jacobson v. Florida Secretary of State*, No. 19-14552, 2020 WL 5289377 (11th Cir. Sept. 3, 2020). The Secretary mischaracterizes *Jacobson*, which expressly distinguished between its redressability analysis for standing and *Ex parte Young*'s connection requirement. *See* 2020 WL 5289377 at *13 ("Article III standing and the proper defendant under *Ex parte Young* are [s]eparate[ ] issues, and *Lee* addressed only the latter. To be a proper defendant under *Ex parte Young* . . . a state official need only have 'some connection' with the enforcement of the challenged law. In contrast, Article III standing requires that the plaintiff's injury be 'fairly traceable' to the defendant's actions and redressable by relief against that defendant. The district court erred by treating *Lee* as if it addressed—let alone resolved—the standing issues in this suit." (citations omitted) (alterations in original)). Thus, by its express terms, *Jacobson*'s standing analysis cannot guide an *Ex parte Young* analysis. Even if *Jacobson* conflicted with the Summary Affirmance and *TDP*, a circuit split does not warrant en banc reconsideration. *See* Fed. R. App. P. 35(a).

> **2.    The Summary Affirmance is uniform with all other Fifth Circuit decisions regarding *Ex parte Young*'s connection requirement.**

*TDP* also undermines the Secretary's argument that en banc review is needed because the Summary Affirmance was entered without "addressing unsettled questions of circuit law." Pet. at 6. *TDP* rejected that claim outright. But even ignoring *TDP*, en banc review is unnecessary and improper because the Summary Affirmance is uniform with prior Fifth Circuit decisions on *Ex parte Young*. *See* Fed. R. App. P. 35(a); *see also* 5th Cir. R. 35.2.

While the "outer bounds," of the connection requirement remain uncharted, *City of Austin*, 943 F.3d at 1000, the Court's precedent shows why en banc review is not needed here. This Court has repeatedly resolved whether a state actor has a sufficient connection to a challenged law to satisfy *Ex parte Young*. It has long recognized that it is unnecessary to know the theoretical *minimal* connection needed to satisfy *Ex parte Young* when it is apparent that the defendant has a *substantial* connection to the challenged law. *See, e.g.*, *K.P. v. LeBlanc*, 627 F.3d 115, 124 (5th Cir. 2010); *Air Evac EMS, Inc. v. Tex., Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 518 (5th Cir. 2017). In particular, *Ex parte Young* is satisfied when a state actor's conduct in compliance with a challenged law compels or constrains plaintiffs, even

indirectly. *See, e.g.*, *K.P.*, 627 F.3d at 124; *Air Evac EMS, Inc.*, 851 F.3d at 519.[2]

Like the defendants in *K.P.* and *Air Evac EMS, Inc.*, *see* Reply to Emergency Motion at 4-5, the Secretary's connection to the Challenged Provisions is apparent, whatever *Ex parte Young's* outer bounds. As this Court just resolved in *TDP*, the Secretary's conduct under the Code constrains the administration of the November election. *First*, she directs county election administrators to disregard ballots not received by the statutory deadline. *Second*, she requires counties to train election officials using her handbook, which offers no discernable standard for verifying signatures and no chance for voters to cure perceived signature mismatches. *Third*, she advises counties that they generally may not accept mail ballots delivered by someone other than the voter, in compliance with the Code. And *fourth*, she opts not to provide funding for

---

[2] The Secretary contends that the Summary Affirmance considered only whether she met the connection requirement but failed to consider whether she had taken a step to enforce the Challenged Provisions. Pet. at 9. But the question of whether a defendant took a step toward enforcement—otherwise characterized as a "scintilla of enforcement," *City of Austin*, 943 F.3d at 1002—falls under the connection requirement, *see TDP*, 2020 WL 5422917 at *5 ("A sufficient connection . . . [requires] some scintilla of enforcement by the relevant state official." (quotations omitted)). Thus, in holding that "no substantial question exists in this matter with respect to whether the Texas Secretary of State bears a sufficient connection to the enforcement of the Texas Election Code's vote-by-mail provisions to satisfy *Ex parte Young's* 'some connection' requirement," Order at 2, the Summary Affirmance necessarily concluded that there was a scintilla of enforcement. And for good reason, based on the Secretary's statutory enforcement authority, evidence of her exercise of that authority, and county election officials' testimony about both. *See* Emergency Mot. at 7, 12-13, 15-16, 20-21.

postage to return mail ballots because the Code envisions that voters will provide their own postage. *See* Tex. Elec. Code § 86.002.

As discussed in *TDP*, that the Secretary is "specially charged with the duty to enforce the statute is sufficiently apparent [because] such duty exists under the general authority of" the Code, *Ex parte Young*, 209 U.S. at 158, which mandates that "[t]he secretary of state is the chief election officer of the state" and refers to her "administration of elections," Tex. Elec. Code § 31.001. In that capacity, she has the duty to "obtain and maintain uniformity in the application, operation, and interpretation of this code and of the election laws outside this code," and is tasked with preparing "detailed and comprehensive written directives and instructions" relating to elections. *Id.* § 31.003. Inherent in the duty to "obtain and maintain" uniform application and provide "directives" on election administration is the power to compel and constrain county election officials to apply the Code uniformly and follow her directives. Indeed, the Code empowers her to compel county officials to adhere to her interpretation of state law "by a temporary restraining order or a writ of injunction of mandamus obtained through the attorney general." *Id.* § 31.005.

What the Secretary says out of one corner of her mouth to this Court about her authority to enforce the Code is at odds with what she is saying to the counties out of the other. For example, during the pendency of this appeal, the Secretary's Director of Elections exercised the Secretary's

enforcement authority by seeking to enjoin Harris County Clerk Chris Hollins from sending vote-by-mail applications to every registered voter in Harris County. *See* Ex. 1, Aug. 27, 2020 Ltr. from K. Ingram to C. Hollins. In a pre-litigation letter to Mr. Hollins, Mr. Ingram explained that "[s]uch action would be contrary to our office's guidance on this issue" and ordered Mr. Hollins to "immediately halt any plan to send an application for ballot by mail to all registered voters." If Mr. Hollins did not do so by a certain time, Mr. Ingram threatened to "request that the Texas Attorney General take appropriate steps under Texas Election Code 31.005." *Id.*

Ultimately, the Secretary had the Attorney General file an application for temporary restraining order and temporary injunction— ironically on the very day that she argued before this Court in *TDP* that she does not have sufficient connection to vote-by-mail laws to satisfy *Ex parte Young*. *See* Ex. 2, App. for TRO; Ex. 3, Aug. 31, 2020 Oral Arg. Calendar.[3]

This action against Mr. Hollins—mounted by the Secretary at the same time as she disclaims authority over Texas's vote-by-mail provisions here—rather vividly demonstrates the "scintilla of enforcement" necessary to satisfy the connection requirement. *See City*

---

[3] A Texas state court ultimately denied the temporary injunction application on the merits, and the Secretary has already appealed. *See* Ex. 4.

*of Austin*, 943 F.3d at 1002. And it drives home why summary affirmance was warranted given the meritlessness of the Secretary's appeal.

### B.   The Secretary's en banc petition does not present a question of exceptional importance.

The Secretary's petition does not present a question of exceptional importance, which typically exists when the decision subject to reconsideration "profoundly upsets" some fundamental doctrine. *Dolgencorp, Inc. v. Miss. Band of Choctaw Indians*, 746 F.3d 588, 589 (5th Cir. 2014).

It has been well-established for a century that plaintiffs can challenge a law's constitutionality by suing an official with "some connection" to the challenged law. *Ex parte Young*, 209 U.S. 123 (1908). *Ex parte Young* ensures that individuals deprived of fundamental constitutional rights are not left without a remedy. Rather than profoundly upsetting the *Ex parte Young* doctrine, the Summary Affirmance applies the doctrine as it is always applied. *See supra* at I.A. Adopting the Secretary's position would profoundly disrupt the doctrine by rendering a state immune from any effort to enjoin its unconstitutional election laws.

The only exceptionally important question now is whether Plaintiffs' preliminary injunction motion, pending in the district court since June, can be considered *before* Plaintiffs suffer irreparable constitutional injuries. Should the answer be 'no,' it will be due to the

Secretary's success in using the interlocutory-appeal and en-banc-petition processes to run the clock.

## II.    There is no unsettled question that warrants rehearing en banc regarding the requested injunction.

The Secretary next argues that en banc review is warranted because the Summary Affirmance did not explicitly discuss "whether the *Ex parte Young* exception applies to suits seeking affirmative action by a state official." Pet. 11. The argument stumbles at the very threshold: Plaintiffs' requested relief is not all affirmative. And even if it were, the panel's conclusion that the Secretary "is amenable to suit *in this instance*," Order at 2 (emphasis added), obviously refers to Plaintiffs' suit.

In any event, it is more than a little ironic—and telling—that the best the Secretary can come up with is an argument based on 70-year old dicta. The source of the question is a footnote in *Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 691 n.11 (1949). *Larson* considered an injunction to *prohibit* an agency from entering into a contract based on sovereign immunity, yet in a footnote said that "a suit may fail . . . if the relief requested . . . will require affirmative action by the sovereign. . . ." *Id.* That comment is classic dicta, not essential to the resolution of that case about *prohibiting* certain action. *See Vann v. Kempthorne*, 534 F.3d 741, 752 (D.C. Cir. 2008) (*Larson* footnote 11 is dicta).

Even if the footnote were binding precedent, it would not prohibit *all* affirmative injunctions, as the Secretary suggests. Rather, as this

Court has observed, *Larson* footnote 11 merely says that suits seeking affirmative action "'may fail' and not that they 'must fail.'" *Saine v. Hosp. Auth. of Hall Cnty.*, 502 F.2d 1033, 1036 (5th Cir. 1974). The limits to *Larson*'s footnote are evident in *Ex parte Young* itself, as detailed in *Vann*, 534 F.3d at 752—which this Court cites in *Green Valley Special Util. Dist. v. City of Schertz, Tex.*, No. 18-51092, 2020 WL 4557844, at *7 (5th Cir. Aug. 7, 2020).[4] *Ex parte Young* holds that "[t]here is no doubt that the court cannot control the exercise of the discretion of an officer. It can only direct affirmative action where the officer having some nondiscretionary duty to perform, but merely ministerial in its nature, refuses or neglects to take such action." 209 U.S. at 158. The Secretary's duty to "obtain and maintain uniformity in the application, operation, and interpretation of [the Code]," Tex. Elec. Code § 31.0003, is decidedly nondiscretionary and ministerial. Plaintiffs' requested relief likewise would not involve any discretionary duty. It would simply require the Secretary to (a) cease enforcing the Challenged Provisions; (b) ensure that ballot envelopes have prepaid postage, and (c) ensure that voters have an "opportunity to cure any issues with signature verification before

---

[4] As *Vann* recognized, to credit the position that *Larson*'s footnote prohibits *all* affirmative injunctions "would be to conclude that *Larson* overruled *Ex parte Young* in dicta, in a footnote, without even citing the case." *Vann*, 534 F.3d at 754. No court has ever reached such an astonishing construction of Larson's errant footnote.

their ballots are rejected."[5] ROA.55-56. Thus, even if *Larson*'s footnote was not obvious dicta, it would not prohibit Plaintiffs' requested relief requested since it is nondiscretionary.

The Secretary's related arguments also fail. She suggests that Plaintiffs' postage claim runs afoul of *Ex parte Young* because it might invoke the fisc, Pet. at 13, but "[s]uch an ancillary effect on the state treasury is a permissible and often an inevitable consequence of the principle announced in *Ex parte Young*." *Edelman v. Jordan*, 415 U.S. 651, 668 (1974). And her citation to *Hawaii v. Gordon*, 373 U.S. 57 (1963), to suggest that—as a blanket rule—courts cannot enter affirmative injunctions, Pet. at 12, does not withstand scrutiny. *Hawaii* sought an order requiring a government official to determine whether certain land "was land or properties 'needed by the United States.'" *Id.* at 58. Although the act of making that determination was ministerial under the Hawaii Statehood Act, the decision regarding which lands were 'needed by the United States' was discretionary. And as *Vann* recognized, to the extent *Larson*'s footnote ever had force, it has been undermined by the Supreme

---

[5] The fact that a cure opportunity would need to be designed if the requested relief were granted hardly constitutes impermissible affirmative action, as *Vann* illustrates. *See* 534 F.3d at 754 ("The Cherokee Nation complains that the requested relief will require amendments to the tribe's constitution . . . . That the tribe might ultimately amend its constitution to bring its elections into conformance with federal law is irrelevant to our sovereign immunity analysis, because any such change would not be the direct result of judicial compulsion.").

Court's later treatment of the *Ex parte Young* doctrine. *See Vann*, 534 F.3d at 752 (citing cases).

Although the dicta in *Larson* "has roused significant debate," *Green Valley*, 2020 WL 4557844 at \*7 n.21, that debate has not changed the precedent binding this Court, which confirms that *Ex parte Young* allows the affirmative injunction Plaintiffs seek. *See, e.g.*, *Milliken v. Bradley*, 433 U.S. 267, 288-90 (1977) (rejecting immunity argument concerning requirement that state pay for future relief); *Thomas ex rel. D.M.T. v. Sch. Bd. St. Martin Par.*, 756 F.3d 380, 387-88 (5th Cir. 2014) (school board "remained subject to affirmative obligations" by injunction); *Nelson v. Univ. of Tex.*, 535 F.3d 318 (5th Cir. 2008) (reinstatement under FMLA is prospective relief under *Ex parte Young*). The district court's conclusion that Plaintiffs' requested relief is permissible—which is implicit in the Summary Affirmance—is thus in line with past precedent; and the commentary in *Green* does not undermine either ruling. En banc review is accordingly not warranted.

## CONCLUSION

Plaintiffs respectfully request that this Court deny the Secretary's petition for rehearing en banc.

DATED: September 14, 2020

*/s/ Skyler M. Howton*

Skyler M. Howton
PERKINS COIE LLP
500 North Akard St., Ste. 3300
Dallas, TX 75201-3347
Telephone: (214) 965-7700
Facsimile: (214) 965-7799

Marc E. Elias
Aria C. Branch
Stephanie Command
PERKINS COIE LLP
700 Thirteenth St. NW, Ste. 800
Washington, D.C. 20005-3960
Telephone: (202) 654-6338
Facsimile: (202) 654-9996

Kevin J. Hamilton
William B. Stafford*
PERKINS COIE LLP
1201 Third Ave., Ste. 4900
Seattle, WA  98101-3099
Telephone: (206) 359-8000
Facsimile:    (206) 359-9000

Gillian Kuhlmann*
PERKINS COIE LLP
1888 Century Park East, Ste. 1700
Century City, CA 90067
Telephone: (310) 788-3245
Facsimile: (310) 788-3399

Sarah Schirack
PERKINS COIE LLP
1029 W. 3rd Ave., Ste. 300
Anchorage, AK 99517
Telephone: (907) 263.6990
Facsimile: (907) 263.6490

*Counsel for Plaintiffs-Appellees*
*\*5th Cir. Admission Pending*

## CERTIFICATE OF SERVICE

On September 14, 2020, this motion was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) no privacy redactions were required under Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned and is free of viruses.

*/s/ Skyler M. Howton*

Skyler M. Howton

*Counsel for Plaintiffs-Appellees*

## CERTIFICATE OF COMPLIANCE

This motion complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 35(b)(2)(A) because it contains 3,855 words, excluding the parts exempted by Rule 32(f); and (2) the typeface and type-style requirements of Rule 32(a)(5)-(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Century Schoolbook font.

*/s/ Skyler M. Howton*

Skyler M. Howton

*Counsel for Plaintiffs-Appellees*

Exhibit 1

# The State of Texas



Elections Division
P.O. Box 12060
Austin, Texas 78711-2060
www.sos.state.tx.us

Phone: 512-463-5650
Fax: 512-475-2811
For Relay Services
(800) 252-VOTE (8683)

**Ruth R. Hughs**
Secretary of State

August 27, 2020

Chris Hollins
Harris County Clerk
201 Caroline St., 3rd Floor
Houston, Texas 77002

Dear Mr. Hollins:

It has come to our office's attention that Harris County intends to send an application to vote by mail to every registered voter in the county. Such action would be contrary to our office's guidance on this issue and an abuse of voters' rights under <u>Texas Election Code Section 31.005</u>.

As you know, the Texas Election Code requires that voters have a qualifying reason to vote by mail. They must be 65 years or older, disabled, out of the county while voting is occurring, or confined in jail but otherwise eligible to vote. It is not possible that every voter in Harris County will satisfy one or more of these requirements.

By sending applications to all voters, including many who do not qualify for voting by mail, your office may cause voters to provide false information on the form. Your action thus raises serious concerns under <u>Texas Election Code Section 84.0041(a)(1)</u>, <u>(2)</u>.

At a minimum, sending an application to every registered voter will confuse voters about their ability to vote by mail. Earlier this year and continuing, there have been a number of lawsuits challenging the fact that Texas law requires a reason to vote by mail. Thus far the challenged law remains the same in spite of these lawsuits. An official application from your office will lead many voters to believe they are allowed to vote by mail, when they do not qualify.

Finally, by sending an application to every registered voter, you could impede the ability of persons who need to vote by mail to do so. Clogging up the vote by mail infrastructure with potentially millions of applications from persons who do not qualify to vote by mail will make it more difficult for eligible mail voters to receive their balloting materials in a timely manner and will hamper efforts to qualify and count these ballots when received by your office.

For all of these reasons, you must immediately halt any plan to send an application for ballot by mail to all registered voters and announce its retraction. If you have not done so by noon on Monday, August 31, 2020, I will request that the Texas Attorney General take appropriate steps under Texas Election Code 31.005.

Sincerely,

Keith Ingram
Director of Elections

Exhibit 2

8/31/2020 1:49 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 45836700
By: Carolina Salgado
Filed: 8/31/2020 1:49 PM

*2020-52383 / Court: 061*

Cause No. _____

| | | |
|---|---|---|
| THE STATE OF TEXAS,<br>*Plaintiff,* | § § § § | In the District Court of |
| v. | § § § | Harris County, Texas |
| CHRIS HOLLINS, in his official<br>capacity as Harris County Clerk,<br>*Defendant.* | § § § § | _____ Judicial District |

### Plaintiff's Original Verified Petition and Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction

The State of Texas, by and through Ken Paxton, the Attorney General of Texas, files this Original Verified Petition and Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction against Defendant Chris Hollins, in his official capacity as Harris County Clerk. The State seeks an injunction against Hollins to prevent him from sending over two million applications for mail ballots to every registered voter in Harris County, irrespective of whether any given voter requested an application or even qualifies to vote by mail. Hollins' actions will create confusion, facilitate fraud, and is an illegal *ultra vires* act because it exceeds his statutory authority.

### Discovery Control Plan

1.  Discovery is intended to be conducted under Level 2 of Texas Rule of Civil Procedure 190.3.

### Claims for Relief

2.  Plaintiff seeks injunctive relief. Therefore, this suit is not governed by the expedited actions process in Tex. R. Civ. P. 169.

## Venue

3.     Venue is proper in Harris County under section 15.002(a)(1), (a)(2), and (a)(3) of the Texas Civil Practices and Remedies Code.

## Waiver of Sovereign Immunity

4.      Neither sovereign immunity nor governmental immunity applies to the State of Texas's *ultra vires* claim. "The basic justification for th[e] *ultra vires* exception to sovereign immunity is that *ultra vires* acts—or those acts without authority—should not be considered acts of the state at all." *Hall v. McRaven*, 508 SW.3d 232, 238 (Tex. 2017) (internal quotation marks and citations omitted). As a result, "*ultra vires* suits do not attempt to exert control over the state—they attempt to reassert the control of the state over one of its agents." *Id.*

5.     In addition, Section 31.005(b) waives Defendant's sovereign immunity to this enforcement action.

## Parties

6.     The plaintiff is the State of Texas, by and through its Attorney General, Ken Paxton. *Yett v. Cook*, 115 Tex. 205, 221, 281 S.W. 837, 842 (1926) ("That the state has a justiciable 'interest' in its sovereign capacity in the maintenance and operation of its municipal corporations in accordance with law does not admit of serious doubt."); *see also State v. Naylor*, 466 S.W.3d 783, 790 (Tex. 2015) ("As a sovereign entity, the State has an intrinsic right to enact, interpret, and enforce its own laws."); Tex. Elec. Code § 31.005(b) (providing that "the secretary may seek enforcement of [an] order [under section 31.005] by a temporary restraining order or a writ of injunction or mandamus obtained through the attorney general").

7.     The defendant is Chris Hollins in his official capacity as the Harris County Clerk. *See Hall*, 508 S.W. at 240 (stating that "an *ultra vires* suit must lie against the allegedly responsible government actor in his official capacity") (internal

quotation marks omitted); Tex. Elec. Code § 31.005 (proper defendant is "a person performing official functions in the administration of any part of the electoral processes" who "fails to comply" with an order from the Secretary of State).

8.     Defendant may be served with process at the Harris County Civil Courthouse, 201 Caroline, Suite 310, Houston, Texas 77002.

### Legal Background

9.     It is well-established law that, as a subdivision of the State of Texas, Harris County possesses only those powers granted to it by the state legislature. *E.g.*, *Town of Lakewood v. Bizios*, 493 S.W.3d 527, 536 (Tex. 2016). Defendant Chris Hollins is an agent of that County and cannot take any action in his official capacity that exceeds the scope of the County's powers.

10.     It is also well-established law that Texas has a strong presumption that voters will cast their ballots in person. "The history of absentee voting legislation in Texas shows that the Legislature has been both engaged and cautious in allowing voting by mail." *In re State*, 602 S.W.3d 549, 558 (Tex. 2020). A qualified voter may vote by mail only (a) "if the voter expects to be absent from the county of the voter's residence on election day," Tex. Elec. Code § 82.001; (b) if the voter has a sickness or physical condition that prevents the voter from appearing at the polling place on election day, *id.* §82.002; (c) "if the voter is 65 years of age or older on election day," *id.* § 82.003; or (d) if "at the time the voter's early voting ballot application is submitted, the voter is confined in jail," *id.* § 82.004.

11.     "To be entitled to vote an early voting ballot by mail, a person who is eligible for early voting must make an application for an early voting ballot to be voted by mail as provided by this title." *Id.* § 84.001(a). "An application must be submitted by mail to the early voting clerk." *Id.* § 84.001(c). Hollins is the early voting clerk for Harris County. *See id.* § 83.002.

12.     "The early voting clerk shall conduct the early voting in each election." *Id.* § 83.001(a). "The clerk is an officer of the election in which the clerk serves." *Id.* § 83.001(b). "The clerk has the same duties and authority with respect to early voting as a presiding election judge has with respect to regular voting, except as otherwise provided by this title." *Id.* § 83.001(c). "The presiding judge is in charge of and responsible for the management and conduct of the election at the polling place of the election precinct that the judge serves." *Id.* § 32.071.

13.     As an early voting clerk, Hollins is empowered (and required) to "mail without charge an appropriate official application form for an early voting ballot to each applicant requesting the clerk to send the applicant an application form." *Id.* § 84.012. No statute, however, empowers an early voting clerk to send a vote-by-mail application form to any applicant who does not request one from the clerk. And power to send unsolicited applications to millions of voters, *the vast majority of whom do not qualify to vote by mail*, cannot fairly be implied from the statutory scheme.

## Factual Background

14.     On August 25, 2020, the Harris County Clerk announced on Twitter, "Update: our office will be mailing every registered voter an application to vote by mail. To learn more about voting by mail in Harris County, Please visit http://HarrisVotes.com/votebymail." The tweet also stated, "Check your mail! Every Harris County registered voter will be sent an application to vote by mail next month." https://twitter.com/HarrisVotes/status/1298372637912072193.

15.     Currently, there are approximately 2.37 million registered voters in Harris County. During the 2016 general election, based on votes cast for presidential candidates, a little over 100,000 voters in Harris County voted by mail. *See* Cumulative Report, Harris County, Texas, General and Special Elections, November 8, 2016, *available at* https://harrisvotes.com/HISTORY/20161108/cumulative/cumulative.pdf. Moreover, the majority of those who chose not to vote by mail are not eligible to do so.

As of July 1, 2019, only 10.9% of the Harris County population is 65 years or older. *See* U.S. Census Bureau, QuickFacts, Harris County, Texas, *available at* https://www.census.gov/quickfacts/fact/table/harriscountytexas/PST045219. And from 2014-2018, only 6.4% of the Harris County population under 65 had a disability based on ACS survey data. *Id.* In addition, the number of voters eligible but confined or absent from the county on election day is necessarily limited. Thus, one can safely conclude the vast majority of registered Harris County voters to whom Hollins intends to send applications to vote by mail are not legally eligible to cast mail-in ballots.

16.     Harris County has already sent vote-by-mail applications to every eligible voter over the age of 65, all of whom *are* eligible to vote by mail. "Nearly 400K vote-by-mail applications sent to Harris Co. seniors ahead of election," Shelley Childers, Thursday, June 11, 2020 (https://abc13.com/texas-mail-in-ballot-voting-coronavirus-during/6243587/) ("[Hollins] said the county clerk's office sent out nearly 400,000 mail-in-ballot applications to Harris County voters who are 65 and older.").

17.     On August 27, 2020, Keith Ingram, Director of Elections for the Texas Secretary of State, sent a letter to Hollins, stating, "It has come to our office's attention that Harris County intends to send an application to vote by mail to every registered voter in the county. Such action would be contrary to our office's guidance on this issue and an abuse of voters' rights under Texas Election Code Section 31.005." Exhibit 1.

18.     Ingram further stated that sending unsolicited vote-by-mail application forms "will confuse voters about their ability to vote by mail…. An official application from your office will lead many voters to believe they are allowed to vote by mail, when they do not qualify," and "by sending an application to every registered voter, you could impede the ability of persons who need to vote by mail to do so. Clogging up the vote by mail infrastructure with potentially millions of applications from persons who do not qualify to vote by mail will make it more difficult for eligible mail voters to receive their balloting materials in a timely manner and will hamper efforts to qualify and count these ballots when received by your office." *Id.*

19.     The letter concluded, "[Y]ou must immediately halt any plan to send an application for ballot by mail to all registered voters and announce its retraction. If you have not done so by noon on Monday, August 31, 2020, I will request that the Texas Attorney General take appropriate steps under Texas Election Code 31.005." *Id.*

20.     On August 28, 2020, Hollins responded that he disagreed with Ingram and would not halt his plans to distribute applications to vote by mail to all registered voters of Harris County regardless of whether such applications were requested or whether the voter is eligible to vote by mail. Exhibit 2. Rather, Hollins indicated that he would include literature with the mailings that would explain the criteria for voting mail ballots. *Id.*

21.     As of noon, August 31, 2020, Hollins had not complied with Ingram's demand.

### The State of Texas requests that Hollins's *ultra vires* acts be enjoined

22.     The Court should issue such an injunction because Hollins lacks the authority to send vote-by-mail applications to every registered voter in Harris County. His decision to do so is therefore *ultra vires*. That is particularly true here, where Hollins plans to send millions of applications regardless of whether those recipients request such applications and regardless of whether they even qualify to vote a mail ballot.

23.     In an *ultra vires* case, a plaintiff must allege, and ultimately prove, that an officer acted without legal authority or failed to perform a purely ministerial act. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009).

24.     Counties in Texas are limited to exercising those powers that are specifically conferred on them by statute or the constitution. *Guynes v. Galveston Cty.*, 861 S.W.2d 861, 863 (Tex. 1993). The County has no sovereign power of its own: It "is a subordinate and derivative branch of state government." *Avery v. Midland Cty.*, 406

S.W.2d 422, 426 (Tex. 1966), *rev'd on other grounds*, 390 U.S. 474 (1968); see TEX. CONST. art. IX, § 1 ("The Legislature shall have power to create counties for the convenience of the people"); *id.* art. XI, § 1 ("The several counties of this State are hereby recognized as legal subdivisions of the State."). As a political subdivision, the County "represent[s] no sovereignty distinct from the state and possess[es] only such powers and privileges" as the State confers upon it. *Wasson Interests, Ltd. v. City of Jacksonville*, 489 S.W.3d 427, 430 (Tex. 2016) (quotation omitted); accord *Quincy Lee Co. v. Lodal & Bain Engineers, Inc.*, 602 S.W.2d 262, 264 (Tex. 1980).

25.     A commissioners court also has power "necessarily implied to perform its duties." *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 29 (Tex. 2003). Such powers must, however, be "indispensable" to perform such an express grant of authority, *Foster v. City of Waco*, 255 S.W. 1104, 1105–06 (Tex. 1923). "Any fair, reasonable, substantial doubt concerning the existence of power is resolved by the courts against the corporation, and the power is denied." *Id.*

26.     Hollins is expressly empowered to send vote-by-mail applications to anyone who applies. Tex. Elec. Code § 84.012.

27.     But there is no statute empowering County Clerks to send applications to vote by mail to voters who have *not* requested such an application. And Hollins's plan to send vote-by-mail applications to *every* registered voter, regardless of whether the application was requested or whether the recipient is qualified to vote a mail ballot, is not an exercise of power that is necessarily implied to perform his duties.

28.     To the contrary, sending millions of unsolicited vote-by-mail applications will affirmatively undermine the Election Code. Unlike some other states, Texas allows ballot by mail only under limited circumstances. Though early voting clerks are charged with reviewing ballot applications, the integrity of the system relies heavily on voters to make good-faith determinations of whether they may vote by mail.

29.    The first step in that process is sending applications to vote by mail to voters who first ask for them. Voters who take the step of requesting a vote-by-mail application have presumably reviewed the eligibility criteria in good faith.

30.    By contrast, there is no such check in sending vote-by-mail applications to every registered voter. As an initial matter, there is no guarantee that every individual registered to vote in Harris County remains eligible to vote at all in Harris County. Leaving aside death or disqualification of voters (e.g., for committing a felony), Texas is a diverse and mobile society. When people move, they often do not inform the County Clerk in their old place of residence that they have registered elsewhere. At best, applications sent to these individuals will simply go unused. More likely, these excess applications will become ripe material for voter fraud. *See Veasey v. Abbott*, 830 F.3d 216, 239 (5th Cir. 2016) (en banc) ("[T]he potential and reality of fraud is much greater in the mail-in-ballot context than with in-person voting.").

31.    Even if the voter rolls in Harris County were perfect, however, sending out applications to vote by mail undermines the function of the system. Voting by mail is a cumbersome process with many steps to limit fraud. Most voters do not qualify for voting by mail. Flooding Harris County with millions of unrequested applications on the eve of an election may thus prevent the timely processing of those who *are* eligible to vote by mail. This is especially true since, as noted above, Harris County has already sent applications to every voter over the age of 65, who *are* eligible to vote by mail.

32.    But sending vote-by-mail applications to every voter, without any attempt at all to tailor such a mass-mailing to persons who definitively are eligible to vote by mail, is certain to result in large numbers of vote-by-mail applications from voters who are ineligible to vote by mail. Regardless of whether Hollins includes literature in his mailing attempting to explain vote-by-mail criteria, it is inevitable that voters who receive applications from a public official with the imprimatur of state authority will wrongly assume they are eligible to vote a mail ballot. This confusion is especially

likely to occur given the large amounts of misinformation provided over the last several months regarding who is and is not eligible to vote by mail in light of the COVID-19 epidemic. *See In re State*, 602 S.W.3d 549, 557-560 (Tex. 2020) (rejecting argument by Harris County Clerk that lack of immunity to COVID-19 constitutes a "disability" qualifying voters to cast mail ballots); Letter to County Officials from Attorney General Ken Paxton, May 1, 2020, at 1 (providing guidance on qualifications to vote by mail based on disability in light of "misreporting and public confusion" surrounding that issue).

33.  The court must thus infer that some of those ineligible voters will submit the applications and be incorrectly approved to vote. Even if Hollins' office is perfect in screening out ineligible voters, this could itself lead to disenfranchisement because voters who submit deficient applications to vote by mail after a certain date may not receive notice that they must attend the polls in person. Tex. Elec. Code. § 86.008(c). The Election Code cannot give the Harris County Clerk the implied power to cause such confusion and disenfranchisement.

34.  This interpretation of the Election Code is consistent with guidance issued by the State's Chief Election Officer. In keeping with her role to "maintain uniformity in the application, operation, and interpretation of" the Election Code, Tex. Elec. Code § 31.003, the Secretary of State advised Collins that sending a vote-by-mail application to every registered voter "impedes the free exercise of a citizen's voting rights." Specifically, the Secretary determined that mailing vote-by-mail application forms "will confuse voters about their ability to vote by mail." Exhibit 1.

35.  The Secretary's office also observed that "by sending an application to every registered voter, you could impede the ability of persons who need to vote by mail to do so. Clogging up the vote by mail infrastructure with potentially millions of applications from persons who do not qualify to vote by mail will make it more difficult for eligible mail voters to receive their balloting materials in a timely manner and will hamper efforts to qualify and count these ballots when received by your office." *Id.*

36.     Hollins has rejected that guidance and declared his intent to proceed with his plan to send a vote-by-mail application to every registered voter in Harris County, regardless of whether that application was requested or whether the recipient qualifies to vote by mail.

37.     Hollins' plan to send a vote-by-mail application to every registered voter is *ultra vires*. He should be enjoined.

### Application for a Temporary Restraining Order

38.     "The purpose of a TRO is to preserve the status quo, which we have defined as the last, actual, peaceable, non-contested status which preceded the pending controversy." *In re Newton*, 146 S.W.3d 648, 651 (Tex. 2004) (footnote and internal quotation marks omitted).

39.     If the Court does not issue the requested temporary restraining order, the status quo will be irrevocably broken. Hollins' public statements and communications with the Secretary's office indicate that he intends to carry out his plan soon. Once that happens, there will be no way to recall more than two million pieces of mail.

40.     The State will suffer irreparable injury in that event. As a sovereign entity, Texas has an inherent right to enforce its own law. *Naylor*, 466 S.W.3d at 790. And the State "indisputably has a compelling interest in preserving the integrity of its election process." *Eu v. S.F. Cty. Democratic Cent. Comm.*, 489 U.S. 214, 231 (1989). That right will be fundamentally undermined the moment that mail goes out. And no other way exists to make Plaintiff whole. The State's sovereign interest cannot be remedied with monetary damages. State officers will be required to combat the confusion that will inevitably result from Hollins's action. Even if they were able to divert their full attention to that task, it likely will not repair the resulting damage. Moreover, time they spend on this issue will distract them from their other critical duties just weeks before an election.

41.    Therefore, the State is entitled to a temporary restraining order preserving the status quo by enjoining Hollins from sending unsolicited vote-by-mail applications until the temporary injunction hearing.

### Application for a Temporary Injunction

42.    For similar reasons, the State is entitled to a temporary injunction. A temporary injunction's purpose is to preserve the status quo of the litigation's subject matter pending a trial on the merits. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002).

43.    Plaintiff must prove three elements to obtain a temporary injunction: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Id.*

44.    Plaintiff describes its probable right to recovery above. Plaintiff is not required to establish that it will prevail at trial to obtain a temporary injunction. *Butnaru* at 211.

45.    An injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard. *Butnaru* at 204. If Hollins is not enjoined and sends the applications, damages are not available as a remedy and would not compensate Plaintiff in any event for the reasons discussed above.

46.    Therefore, Plaintiff is entitled to a temporary injunction enjoining Hollins from committing the *ultra vires* act of sending unsolicited vote-by-mail applications to every registered voter.

### Application for a Permanent Injunction

47.    Plaintiff requests trial on the merits, where it will seek a permanent injunction enjoining Hollins from committing the *ultra vires* act of sending unsolicited vote-by-mail applications to every registered voter.

## Prayer

48.    Therefore, Plaintiff seeks a temporary restraining order, temporary injunction, and permanent injunction enjoining Hollins from sending unsolicited vote-by-mail applications to every eligible voter in Harris County.

## Request for Disclosure

49.    Plaintiff requests that Defendant disclose, within 50 days of the service of this request, the information or material described in Texas Rules of Civil Procedure 194.2.

## Notice of Hearing

50.    Please take notice that a hearing on Plaintiff's Application for a Temporary Restraining Order will take place on _____, 2020 at [time] by remote videoconference.

Dated: August 31, 2020.

Respectfully submitted,

KEN PAXTON
Attorney General

JEFFERY C. MATEER
First Assistant Attorney General

RYAN L. BANGERT
Deputy First Assistant Attorney General

DARREN L. MCCARTY
Deputy Attorney General for Civil Litigation

CHARLES K. ELDRED
Assistant Attorney General

KATHLEEN HUNKER
Assistant Attorney General

/S/ *Charles K. Eldred*
CHARLES K. ELDRED
State Bar No. 00793681


Special Litigation Division
OFFICE OF THE ATTORNEY GENERAL OF TEXAS
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 936-1706 • fax (512) 320-0167
charles.eldred@oag.texas.gov

*ATTORNEYS FOR PLAINTIFF*

Plaintiff's Original Verified Petition and Application for Temporary Restraining Order, Temporary
Injunction, and Permanent Injunction                                                    Page 13
*The State of Texas v. Chris Hollins*

Cause No. _____

| | | |
|---|---|---|
| THE STATE OF TEXAS, | § | In the District Court of |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| v. | § | Harris County, Texas |
| | § | |
| | § | |
| CHRIS HOLLINS, in his official | § | |
| capacity as Harris County Clerk, | § | _____ Judicial District |
| *Defendant.* | § | |

**Declaration of Keith Ingram**

My name is Keith Ingram. I am over eighteen years of age, am of sound mind, and am capable of making this declaration. I am the Director of Elections for the Texas Secretary of State.

I have read the above Original Verified Petition and Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction. I verify that the facts stated therein are within my personal knowledge and are true and correct.

_____
Keith Ingram

Sworn and subscribed before me on _____, 2020.

_____
Notary Public, State of Texas

Plaintiff's Original Verified Petition and Application for Temporary Restraining Order, Temporary
Injunction, and Permanent Injunction                                                    Page 14
*The State of Texas v. Chris Hollins*

Exhibit 3

**PANEL:**        **JUDGES CAROLYN DINEEN KING, CARL E. STEWART, AND LESLIE H. SOUTHWICK**

**R E V I S E D  08/28/20**

### UNITED STATES COURT OF APPEALS
### FOR THE FIFTH CIRCUIT
### NEW ORLEANS, LOUISIANA
### EN BANC COURTROOM

**The Court has scheduled the following cases for VIDEO CONFERENCING oral argument on the days shown:**

COUNSEL FOR EACH PARTY MUST PRESENT ARGUMENT UNLESS EXCUSED BY THE COURT. CASES MARKED
*ARE LIMITED TO 20 MINUTES PER SIDE; CASES WITH NO * ARE LIMITED TO 30 MINUTES PER SIDE UNLESS PREVIOUSLY GRANTED ADDITIONAL TIME. "SIDE" REFERS TO PARTIES IN THEIR POSITION ON APPEAL. IF IN DOUBT, CONSULT THE CLERK'S OFFICE.

**MONDAY, AUGUST 31, 2020 -** *COURT CONVENES AT 9:30 A.M.*
*No. 18-50981 United States of America v. Juan Francisco Trevino Chavez, aka Kiko, Appellant.
*No. 17-30351 Kuantau Reeder, Appellant v. Darrell Vannoy, Etc.
*No. 20-50407 TX Democratic Party, Et Al. v. Greg Abbott, Etc., Et Al., Appellants.

**TUESDAY, SEPTEMBER 1, 2020 -** *COURT CONVENES AT 9:30 A.M.*
*No. 19-50832 United States of America v. Andres Soriano, Appellant.
*No. 19-20800 Ravago Americas LLC v. Kirt Dmytruk, Appellant.
*No. 19-11272 Basic Capital Management, Inc., Et Al., Appellants v. Dynex Capital, Inc., Et Al.
*No. 19-40799 Jay Rivera v. Kirby Offshore Marine, LLC, Etc., Appellant.

**WEDNESDAY, SEPTEMBER 2, 2020 -** *COURT CONVENES AT 9:30 A.M.*
*No. 18-60792 Changsheng Du, Petitioner v. William P. Barr, Etc.
*No. 19-60849 Blaine McGill, Appellant v. BP Exploration & Production, Inc., Et Al.
*No. 20-60072 The Lamar Co., LLC, Appellant v. The Mississippi Transportation Commission.

LYLE W. CAYCE

CLERK OF COURT

NEW ORLEANS, LA 07/24/20 – 08

### IMPORTANT NOTES

1. All oral arguments are recorded.  Oral argument recordings generally are available late in the day argument is held.
Listeners using "Windows Media" software can search for an argument by case number, date, case title or attorney's name.
PERSONAL RECORDERS ARE NOT PERMITTED IN THE COURTROOM.  With advance approval however, counsel may contract for an official court reporter to be present and transcribe the argument.

2. Live Audio Streaming for the public is available on the day of argument when court begins:
   En Banc Courtroom:  https://5thcircuit.streamguys1.com/enbanc

3. Interested individuals can register to receive notice in cases of interest in the Fifth Circuit:

   Notice for Cases of Interest for Non-Attorneys
   Notice for Cases of Interest for Attorneys

Exhibit 4

**CAUSE NO. 2020-52383**

| | | |
|---|---|---|
| **THE STATE OF TEXAS,** | § | |
| **Plaintiff,** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| **vs.** | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| **CHRIS HOLLINS, in his official** | § | |
| **Capacity as Harris County Clerk,** | § | |
| **Defendant.** | § | **127TH JUDICIAL DISTRICT** |

**ORDER ON TEMPORARY INJUNCTION APPLICATION**

**Background**

On August 25, 2020, the Harris County Clerk, Chris Hollins, tweeted the following:



Two days later, Keith Ingram, the Elections Director for the Secretary of State, sent a letter to Mr. Hollins asking him to "immediately halt any plan to send an application for ballot by mail to all registered voters."

Ingram and Hollins spoke by phone on August 31 and discussed Hollins's plan and Ingram's objections. The State of Texas filed its Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction on that same day. The Parties agreed to litigate the issues at a temporary injunction hearing on September 9.

The State seeks to restrain Hollins pursuant to section 31.005 of the Texas Election Code, which states:

Sec. 31.005. PROTECTION OF VOTING RIGHTS.

(a) The secretary of state may take appropriate action to protect the voting rights of the citizens of this state from abuse by the authorities administering the state's electoral processes.

(b) If the secretary determines that a person performing official functions in the administration of any part of the electoral processes is exercising the powers vested in that person in a manner that impedes the free exercise of a citizen's voting rights, the secretary may order the person to correct the offending conduct. If the person fails to comply, the secretary may seek enforcement of the order by a temporary restraining order or a writ of injunction or mandamus obtained through the attorney general.

TEX. ELEC. CODE § 31.005.

The State also contends that Hollins is acting *ultra vires* under the State's interpretation of Election Code section 84.012, which reads, "[t]he early voting clerk shall mail without charge an appropriate official application form for an early voting ballot to each applicant requesting the clerk to send the applicant an application form." *Id.* § 84.012. In the State's view, section 84.012 prohibits the clerk from sending an application for mail ballot unless and until the voter has requested one.[1]

---

[1] Voting by mail is a multi-step process. First, a registered voter must submit to the early voting clerk an application indicating the basis on which the voter is qualified to vote by mail. TEX. ELEC. CODE §§ 84.001, 84.007-.009. The early voting clerk must then process the application and mail a ballot to the voter. *Id.* at § 86.001. Finally, the voter must return the marked ballot to the early voting clerk within the statutorily prescribed deadlines. *Id.* at §§ 86.006, 86.007. Importantly, Mr. Hollins plans to send only applications, not ballots, to all registered voters.

Having considered the evidence and arguments presented by the Parties, the Court finds that Mr. Hollins's contemplated action is not *ultra vires* and does not impede the free exercise of voting rights. No writ shall issue.

### Analysis

**1.  *Ultra Vires* Claim**

A government official acts *ultra vires* if the official "acted without legal authority or failed to perform a ministerial act."  *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009). Here, the Court must determine whether the statutory provisions of the Texas Election Code permit the conduct contemplated by Mr. Hollins. The Court's primary objective in construing a statute is to ascertain the Legislature's intent. *City of Rockwall v. Hughes*, 246 S.W.3d. 621, 625 (Tex. 2008). To do so, the Court reads the statute as a whole, not individual provisions in isolation. *Union Carbide Corp. v. Synatzske*, 438 S.W.3d 39, 51 (Tex. 2014).

As County Clerk, Mr. Hollins serves as the "early voting clerk" for the November 2020 election in Harris County. TEX. ELEC. CODE § 83.002. The early voting clerk has "the same duties and authority with respect to early voting as a presiding election judge has with respect to regular voting . . .." *Id*. at § 83.001(c). Thus, as it relates to early voting, Mr. Hollins "is in charge of and responsible for the management and conduct of the election . . .." *Id*. at § 32.071. In Texas, early voting is conducted in person and by mail. *Id*. at § 81.001. Accordingly, the Election Code gives Mr. Hollins a broad grant of authority to conduct and manage mail-in voting, subject only to any express limitation on that power by the Legislature. *See Chambers-Liberty Counties Navigation District v. State*, 575 S.W.3d 339,

352 (Tex. 2019) (finding officials' conduct to be *ultra vires* where the conduct conflicted with statutes circumscribing an otherwise broad grant of authority).

The Legislature has spoken at length on the mechanisms for mail-in voting. There are no fewer than 42 Election Code provisions on the subject. *See* TEX. ELEC. CODE, Chs. 84, 86 & 87. In those provisions, the Legislature has made clear that in order to vote by mail a voter first "must make an application for an early voting ballot." *Id.* at § 84.001. But, as to how the voter is to obtain the application, the Election Code is silent.

There is no code provision that limits an early voting clerk's ability to send a vote by mail application to a registered voter. Section 84.012 contains no prohibitive language whatsoever, but rather, requires the early voting clerk to take affirmative action in the instance a voter does request an application to vote by mail. That the clerk must provide an application upon request does not preclude the clerk from providing an application absent a request.

Indeed, there are a number of code provisions that demonstrate the Legislature's desire for mail voting applications to be freely disseminated. For example, section 1.010 mandates that a county clerk with whom mail voting applications are to be filed (*e.g.,* Mr. Hollins) make the applications "readily and timely available." *Id.* at § 1.010. In addition, section 84.013 requires that vote by mail applications be provided "in reasonable quantities without charge to individuals or organizations requesting them for distribution to voters." *Id.* at § 84.013. Further, the Court notes that, consistent with these provisions, both the Secretary of State and the County make the application for a mail ballot readily available on their respective websites.

Against the backdrop of this statutory scheme, the Court cannot accept the State's interpretation of section 84.012. To do so would read into the statute words that do not exist and would lead to the absurd result that any and every private individual or organization may without limit send unsolicited mail voting applications to registered voters, but that the early voting clerk, who possesses broad statutory authority to manage and conduct the election, cannot. Mr. Hollins's contemplated conduct does not exceed his statutory authority as early voting clerk and therefore is not *ultra vires*.

## 2. Section 31.005 Claim

With respect to the State's invocation of section 31.005 — a statute intended to *protect* Texans' exercise of the right to vote — as a basis to restrain Mr. Hollins, the Court is confounded. It appears the State contends that Mr. Hollins's actions "may impede[] the free exercise of a citizen's voting rights," *id.* at § 31.005, by fostering confusion over voter eligibility to vote by mail. That contention rings hollow, however. The State offered no evidence to support such a claim, and the document Mr. Hollins intends to send to voters, as set forth below, accurately and thoroughly informs them of Texas law concerning mail-in voting.

| Para recibir esta información o la Solicitud de Voto por Correo en Español, comuníquese con: | Để nhận được thông tin này hoặc Đơn Xin Bầu Cử Bằng Thư bằng Tiếng Việt, xin liên lạc: | 要接收此信息或中英文的郵遞投票申請表格，請聯繫： | QUESTIONS? CONTACT:<br>✉ vbm@harrisvotes.com<br>☎ 713-755-6965 |



# DO *YOU* QUALIFY TO VOTE BY MAIL?

**READ THIS BEFORE APPLYING FOR A MAIL BALLOT**
The Harris County Clerk's Office is sending you this application as a service to all registered voters.
**However, NOT ALL VOTERS ARE ELIGIBLE TO VOTE BY MAIL.**
**READ THIS ADVISORY TO DETERMINE IF YOU ARE ELIGIBLE BEFORE APPLYING.**

**You are eligible to vote by mail if:**

1. **You are age 65 or older** by Election Day, November 3, 2020;
2. **You will be outside of Harris County for all of the Early Voting period** (October 13th - October 30th) **and on Election Day** (November 3rd);
3. **You are confined in jail** but otherwise eligible to vote;
4. **You have a disability.** Under Texas law, you qualify as disabled if you are sick, pregnant, or if voting in person will create a likelihood of injury to your health.
   - The Texas Supreme Court has ruled that **lack of immunity to COVID-19 can be considered as a factor** in your decision as to whether voting in person will create a likelihood of injury to your health, **but it cannot be the only factor.** You can take into consideration aspects of your health and health history that are physical conditions in deciding whether, under the circumstances, voting in person will cause a likelihood of injury to your health.
   - **YOU DO NOT QUALIFY TO VOTE BY MAIL AS "DISABLED" JUST BECAUSE YOU FEAR CONTRACTING COVID-19. YOU MUST HAVE AN ACCOMPANYING PHYSICAL CONDITION. IF YOU DO NOT QUALIFY AS "DISABLED," YOU MAY STILL QUALIFY IN CATEGORIES 1 - 3 ABOVE.**
   - It's up to you to determine your health status—the Harris County Clerk's Office does not have the authority or ability to question your judgment. **If you properly apply to vote by mail** under any of the categories of eligibility, **the Harris County Clerk's Office must send you a mail ballot.**
   - To read **guidance from the U.S. Centers for Disease Control and Prevention (CDC)** on which medical conditions put people at increased risk of severe illness from COVID-19, please visit: **www.HarrisVotes.com/CDC**

**If you have read this advisory and determined that you are eligible to vote by mail, please complete the attached application and return it to the Harris County Clerk's Office! Voting by mail is a secure way to vote, and it is also the safest and most convenient way to vote.**

**To receive CRITICAL ELECTION UPDATES, sign up at:** 🌐 **www.harrisvotes.com/text**

## APPLICATION FOR BALLOT BY MAIL

For Official Use Only: VUID #/County Election Pct #
1230000000/906

# CHRIS HOLLINS


COUNTY CLERK
HARRIS COUNTY, TEXAS
ESTABLISHED 1836

☑ Fill in (or verify) your name and address

☑ Select your reason for using Ballot By Mail

☑ Select your Election(s)

☑ Sign your application, affix a stamp, and place in the mail

*PROTECTING YOUR RIGHT TO VOTE*

**1** APPLICANT'S VOTER REGISTRATION: Name/Address/City/State/Zip Code

JOHN Q. PUBLIC
123 MAIN STREET
HOUSTON, TEXAS 77078-0044

PHONE NUMBER:
(Optional)

PREFERRED MAILING ADDRESS (REQUIRED FOR OUT OF COUNTY & IN JAIL):
Address/City/State/Zip Code

1230000000

SIGN YOUR APPLICATION. If you cannot sign, you must have a person witness your mark. If a person helped you fill out this application you must give the name of that person on line immediately below your signature. In any single election, it is a Class A misdemeanor for any person to sign an application as a witness for more than one applicant, unless the second and subsequent application are related to the witness as a parent, spouse, child, sibling, or grandparent. If you need additional information call the Texas Secretary of State at 1-800-252-8683. COMMON CONTRACT CARRIER: You may submit via a common contract carrier which is a bona fide, for profit carrier.

**2** REASON FOR APPLYING FOR BALLOT BY MAIL:
___ Age 65 or older
___ Have a disability
___ **Outside the county throughout Early Voting & Election Day** (Oct. 13 - Oct. 30, 2020 & Nov. 3, 2020)
___ Confined in jail
(**Dates You Will be Outside the County: ___/___/___ - ___/___/___)

**3** ELECTIONS FOR WHICH YOU ARE APPLYING:
___ ALL 2020 ELECTIONS
___ November 3, 2020

**4** I certify that the information given on this application is true, and I understand that giving false information on this application is a crime.
SIGN HERE X 

**5** OPTIONAL - FILL OUT THIS SECTION ONLY IF YOU ASSISTED A VOTER WITH THIS FORM
___ Check this box if acting as an ASSISTANT

X _____
Signature of Assistant

PRINT FULL NAME of Assistant

Assistant's Address of Residence or Title of Elections Official

Assistant's Relationship to Applicant

**6** OPTIONAL - FILL OUT THIS SECTION ONLY IF YOU ARE A WITNESS FOR A VOTER WITH THIS FORM
___ Check this box if acting as a WITNESS

X FOR WITNESS: Applicant, if unable to sign, shall make a mark in the presence of witness. If Applicant is unable to make mark, the witness shall check here ___

Signature of Applicant As Registered

X _____
Signature of Witness

PRINT FULL NAME of Witness

Witness' Address of Residence or Title of Elections Official

Witness' Relationship to Applicant



The Texas Supreme Court has instructed that the decision to apply for a ballot to vote by mail is within the purview of the voter. *In re State of Texas*, 602 S.W.3d 549 (Tex. 2020). This Court firmly believes that Harris County voters are capable of reviewing and understanding the document Mr. Hollins proposes to send and exercising their voting rights in compliance with Texas law.

Finally, the irony and inconsistency of the State's position in this case is not lost on the Court. The State has stipulated that it has no objection to unsolicited mail ballot applications being sent to voters age 65 or over. But being 65 or older is only one of four statutorily permitted bases for voting by mail in Texas, the others being disability,[2] absence and incarceration. TEX. ELEC. CODE §§ 82.001-.004. The State offers no evidence or compelling explanation for its arbitrary and selective objection to the mailing of vote by mail applications to registered voters under the age of 65.

The Court DENIES the State of Texas's application for temporary injunction.


Signed on September 11, 2020.


_____
R.K. Sandill
Judge, 127th District Court
Harris County, Texas


---

[2] The Parties dedicated a great deal of briefing and argument to the issue of whether and to what degree Texas voters may qualify to vote by mail under the disability category during the COVID-19 pandemic. This issue, however, is not before this Court, having been decided by the Texas Supreme Court in *In Re State of Texas*, 602 S.W.3d 549 (Tex. 2020).