No. 20–50654

# In the United States Court of Appeals for the Fifth Circuit

LINDA JANN LEWIS, MADISON LEE, ELLEN SWEETS, BENNY ALEXANDER, GEORGE MORGAN, VOTO LATINO, TEXAS STATE CONFERENCE OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, AND TEXAS ALLIANCE FOR RETIRED AMERICANS,

*Plaintiffs–Appellees,*

*v.*

RUTH HUGHS, IN HER OFFICIAL CAPACITY AS TEXAS SECRETARY OF STATE,

*Defendant-Appellant.*

On Appeal from the United States District Court
for the Western District of Texas, San Antonio
(Case No. 5:20-cv-00577)
The Honorable Orlando L. Garcia, Chief U.S. District Judge

**BRIEF OF *AMICI CURIAE* FORT BEND COUNTY, TEXAS; HARRIS COUNTY, TEXAS; AND DANA DEBEAUVOIR, TRAVIS COUNTY CLERK IN SUPPORT OF PLAINTIFFS-APPELLEES**

JUSTIN CARL PFEIFFER
*Counsel of Record*

(*Counsel listed on subsequent pages*)

BRIDGETTE SMITH-LAWSON
FORT BEND COUNTY ATTORNEY

JUSTIN CARL PFEIFFER
*Counsel of Record*
COUNTY ATTORNEY'S OFFICE
FORT BEND COUNTY, TEXAS
401 Jackson Street, 3rd Floor
Richmond, Texas 77469
(281) 341-4555
justin.pfeiffer@fortbendcountytx.gov

COUNSEL FOR *AMICUS CURIAE* FORT BEND COUNTY, TEXAS

CHRISTIAN D. MENEFEE
HARRIS COUNTY ATTORNEY
JONATHAN FOMBONNE
DEPUTY COUNTY ATTORNEY

SETH HOPKINS
*Counsel of Record*
COUNTY ATTORNEY'S OFFICE
HARRIS COUNTY, TEXAS
1019 Congress St., 15th Floor
Houston, TX 77002
[Tel.] (713) 755-5585
Seth.Hopkins@cao.hctx.net

COUNSEL FOR *AMICUS CURIAE* HARRIS COUNTY, TEXAS

DELIA GARZA
TRAVIS COUNTY ATTORNEY

SHERINE E. THOMAS
*Counsel of Record*
LESLIE W. DIPPEL
COUNTY ATTORNEY'S OFFICE
TRAVIS COUNTY, TEXAS
P.O. Box 1748
Austin, Texas 78767
[Tel.] (512) 854-9513
sherine.thomas@traviscountytx.gov

COUNSEL FOR *AMICUS CURIAE* DANA DEBEAUVOIR, TRAVIS COUNTY CLERK

## CERTIFICATE OF INTERESTED PERSONS

Under the fourth sentence of Fifth Circuit Rule 28.2.1, *amici curiae*, as governmental parties, need not furnish a certificate of interested persons.

DATED:        FEBRUARY 24, 2021          */s/ Justin C. Pfeiffer*
                                          JUSTIN C. PFEIFFER

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ..................................................... iii

TABLE OF CONTENTS ..........................................................................iv

TABLE OF AUTHORITIES ......................................................................vi

STATEMENT OF INTEREST OF *AMICI CURIAE* ............................................1

SUMMARY OF THE ARGUMENT ...............................................................4

ARGUMENT ........................................................................................6

I.  THE SECRETARY IS PRESUMPTIVELY THE APPROPRIATE STATE OFFICIAL UNDER *EX PARTE YOUNG* TO CHALLENGE A TEXAS ELECTION LAW ............................7

    A.    To Ensure the Supremacy of Federal Constitutional Law, *Ex parte Young's* Fiction Contemplates a Proxy for the State ...........................7

    B.    In a Constitutional Challenge to a Texas Election Law, the Secretary Generally Serves as that Proxy...........................................................9

II. TEXAS LAW CONTRADICTS THE SECRETARY'S ASSERTION THAT SHE DOES NOT HAVE A SUFFICIENT CONNECTION TO THE ENFORCEMENT OF THE CHALLENGED PROVISIONS.................................................................................12

III.THE SECRETARY'S POSITION, IF ADOPTED, WOULD HAVE SIGNIFICANT COLLATERAL CONSEQUENCES.................................................................18

    A.    The § 1983 Plaintiff's Pyrrhic Victory: Probable Ancillary Litigation and Improbable Attorney's Fees...........................................................19

        1.    The Secretary's Approach Invites Equal Protection Violations.................................................................................19

        2.    The Secretary's Approach Invites Underenforcement By Nullifying Attorney's Fees.......................................................20

B. The Secretary's Alternative Argument About the Structure of Appellees' Sought Injunction is Substantially Flawed and Should be Rejected as Not Properly Within this Court's Appellate Jurisdiction 22

 1. The Secretary's Argument May Not Be Reviewed in this Posture ....22

 2. This Court Should Reject the Secretary's Invitation to Limit the Scope of Mandatory Injunctions that Federal Courts may Issue Against State Officials ...............................................................................................23

CONCLUSION .........................................................................................................26

SIGNATURE CERTIFICATION ........................................................................................28

CERTIFICATE OF ELECTRONIC COMPLIANCE ............................................................28

CERTIFICATE OF COMPLIANCE WITH TYPE VOLUME LIMIT ......................................29

CERTIFICATE OF SERVICE ..........................................................................................30

## TABLE OF AUTHORITIES

CASES                                                                                                     PAGE

*Chambers-Liberty Cntys. Navigation Dist. v. State*,
    575 S.W.3d 339 (Tex. 2019) ..............................................................4

*City of Austin v. Paxton*,
    943 F.3d 993 (5th Cir. 2019), *cert. denied sub nom. Austin, Tex. v. Paxton*, No.
    19-1441, 2021 WL 78079 (U.S. Jan. 11, 2021).........................................*passim*

*City of El Paso v. Heinrich*,
    284 S.W.3d 366 (Tex. 2009) ..............................................................6

*City of St. Louis v. Praprotnik*,
    485 U.S. 112 (1988).........................................................................20

*Coal. to Defend Affirmative Action v. Brown*,
    674 F.3d 1128 (9th Cir. 2012) .........................................................17

*Davenport v. Garcia*,
    834 S.W.2d 4 (Tex. 1992)..................................................................9

*E.E.O.C. v. Neches Butane Prods. Co.*,
    704 F.2d 144 (5th Cir. 1983) ...........................................................23

*Ex parte State of N.Y. No. 1*,
    256 U.S. 490 (1921)...........................................................................7

*Ex parte Young*,
    209 U.S. 123 (1908)..................................................................*passim*

*Fischer v. United States*,
    759 F.2d 461 (5th Cir. 1985) ...........................................................23

*Gray v. Sanders*,
    372 U.S. 368 (1963)...................................................................19, 20

*Grutter v. Bollinger*,
539 U.S. 306 (2003)...................................................................................17

*Hopwood v. Texas*,
78 F.3d 932 (5th Cir. 1996), *abrogated on other grounds by Grutter v. Bollinger*,
539 U.S. 306 (2003)...................................................................................17

*Humphries v. Cnty. of L.A.*,
649 F.3d 1077 (9th Cir. 2011) (Mem.) ...................................................21

*Idaho v. Coeur d'Alene Tribe of Idaho*,
521 U.S. 261 (1997)................................................................................7, 8

*In re Green Party of Texas*,
No. 20-0708, 2020 WL 5580156, — F.3d — (Tex. Sept. 18, 2020) .............5, 15

*K.P. v. LeBlanc*,
627 F.3d 115 (5th Cir. 2010) ...................................................................13

*L.A. Cnty. v. Humphries*,
562 U.S. 29 (2010)....................................................................................21

*Lightbourn v. Cnty. of El Paso, Tex.*,
118 F.3d 421 (5th Cir. 1997) ........................................................10, 11, 12

*McCarthy ex rel. Travis v. Hawkins*,
381 F.3d 407 (5th Cir. 2004) ...............................................................1, 22

*Mi Familia Vota v. Abbott*,
977 F.3d 461 (5th Cir. 2020) ...................................................................25

*Monell v. Dep't of Social Servs.*,
436 U.S. 658 (1978)..............................................................................1, 20

*Moore v. Ogilvie*,
394 U.S. 814 (1969)..................................................................................19

*Morris v. Livingston*,
739 F.3d 740 (5th Cir. 2014) ...................................................................13

*Northshore Dev., Inc. v. Lee*,
   835 F.2d 580 (5th Cir. 1988) ...............................................................23

*OCA-Greater Hous. v. Texas*,
   867 F.3d 604 (5th Cir. 2017) ...............................................................10

*Okpalobi v. Foster*,
   244 F.3d 405 (5th Cir. 2001) (en banc) ...............................................13

*Pennhurst State Sch. & Hosp. v. Halderman*,
   465 U.S. 89 (1984).............................................................................7, 8

*Reynolds v. Sims*,
   377 U.S. 533 (1964).............................................................................20

*Rheuark v. Shaw*,
   628 F.2d 297 (5th Cir. 1980) ...............................................................12

*Richardson v. Texas Sec'y of State*,
   978 F.3d 220 (5th Cir. 2020) ...................................................23, 24, 25

*Saldano v. State*,
   70 S.W.3d 873 (Tex. Crim. App. 2002) ..................................................9

*State v. Hollins*,
   No. 20-0729, 2020 WL 5919729, — S.W.3d — (Tex. Oct. 7, 2020).........*passim*

*Tex. All. for Retired Ams. v. Hughs*,
   976 F.3d 564 (5th Cir. 2020) (per curiam) ...........................................24

*Tex. All. for Retired Ams. v. Hughs*,
   No. 5:20-CV-128, 2020 WL 6601593 (S.D. Tex. Oct. 26, 2020)...............24, 25

*Tex. Democratic Party v. Abbott*,
   978 F.3d 168 (5th Cir. 2020), *cert. denied*, No. 19-1389, 2021 WL 78479 (U.S.
   Jan. 11, 2021).....................................................................................12

*Tex. League of United Latin Am. Citizens v. Abbott*,
   978 F.3d 136 (5th Cir. 2020) .......................................................24, 25

*United States v. Fort Bend Cnty., Tex.*,
  No. 4:09-cv-01058 (S.D. Tex. Apr. 9, 2009)..........................................................2

*Va. Office for Prot. & Advocacy v. Stewart*,
  563 U.S. 247 (2011)..........................................................................................7, 8

*Williams on Behalf of J.E. v. Reeves*,
  954 F.3d 729 (5th Cir. 2020) ...............................................................................22

## CONSTITUTIONS

TEX. CONST. art. 4, § 3 ...........................................................................................9

TEX. CONST. of 1845 art. 5, § 3 ..............................................................................9

TEX. CONST. of 1861 art. 5, § 3 ..............................................................................9

TEX. CONST. of 1866 art. 5, § 3 ..............................................................................9

TEX. CONST. of 1869 art. 4, § 3 ..............................................................................9

TEX. CONST. of 1876 art. 4, § 3 ..............................................................................9

U.S. CONST., art. III ...............................................................................................7

U.S. CONST. amend. XI .................................................................................*passim*

U.S. CONST. amend. XIV .......................................................................18, 19, 21

## STATUTES

42 U.S.C. § 1972 ...................................................................................................11

42 U.S.C. § 1973 ...................................................................................................11

42 U.S.C. § 1973ee–1 ...........................................................................................11

42 U.S.C. § 1983 .....................................................................................................6

42 U.S.C. § 1988(b) ..............................................................................................20

TEX. ELEC. CODE Ch. 31, subch. B ............................................................2

TEX. ELEC. CODE Ch. 84 .......................................................................15

TEX. ELEC. CODE Ch. 86 ..................................................................*passim*

TEX. ELEC. CODE Ch. 87 ........................................................12, 14, 25

TEX. ELEC. CODE § 31.003 .............................................................*passim*

TEX. ELEC. CODE § 43.007 ....................................................................25

TEX. ELEC. CODE § 52.004 ....................................................................16

TEX. ELEC. CODE § 82.003 ....................................................................14

TEX. ELEC. CODE § 84.013 ....................................................................15

TEX. ELEC. CODE § 86.002 ....................................................................12

TEX. ELEC. CODE § 86.006 ....................................................................12

TEX. ELEC. CODE § 86.007 ....................................................................12

TEX. ELEC. CODE § 86.009 ....................................................................16

TEX. ELEC. CODE § 87.027 ....................................................................12

TEX. ELEC. CODE § 161.008(b) ..............................................................15

**RULES**

FEDERAL RULE OF APPELLATE PROCEDURE 25(d)(3) ..............................30

FEDERAL RULE OF APPELLATE PROCEDURE 29(a)(2) ...............................4

FEDERAL RULE OF APPELLATE PROCEDURE 29(a)(6) ...............................1

FEDERAL RULE OF APPELLATE PROCEDURE 29(a)(4)(E) ..........................4

FEDERAL RULE OF APPELLATE PROCEDURE 29(a)(5) ..............................................29

FEDERAL RULE OF APPELLATE PROCEDURE 32(a)(5) ..............................................29

FEDERAL RULE OF APPELLATE PROCEDURE 32(a)(6) ..............................................29

FEDERAL RULE OF APPELLATE PROCEDURE 32(f)....................................................29

FEDERAL RULE OF APPELLATE PROCEDURE 32(g)...................................................29

FIFTH CIRCUIT GEN. DKT. NO. 2021-4......................................................................1

FIFTH CIRCUIT RULE 25.2.1 .....................................................................................28

FIFTH CIRCUIT RULE 25.2.5 .....................................................................................30

FIFTH CIRCUIT RULE 25.2.13 ...................................................................................28

FIFTH CIRCUIT RULE 28.2.1 .................................................................................... iii

FIFTH CIRCUIT RULE 29.2 .........................................................................................4

FIFTH CIRCUIT RULE 32.2 .......................................................................................29

FIFTH CIRCUIT RULE 32.3 .......................................................................................29

## OTHER AUTHORITIES

17A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, EDWARD H. COOPER & VIKRAM
    DAVID AMAR, FEDERAL PRACTICE AND PROCEDURE § 4232 (3d ed. 2007)..........8

Letter Brief of September 15, 2020, In re Green Party of Texas, 2020 WL 5580156
    (Tex. Sept. 18, 2020) (No. 20–0708) (Tex. Sept. 15, 2020)...............................16

Letter Advisory of September 16, 2020, In re Green Party of Texas, 2020 WL
    5580156 (Tex. Sept. 18, 2020) (No. 20–0708) (Tex. Sept. 16, 2020) ...............16

Brief of *Amici Curiae* Fort Bend County and City of Houston, State v. Hollins, No.
    20-0729, 2020 WL 5919729, — S.W.3d — (Tex. Oct. 7, 2020) (No. 20-0729)
    2020 WL 6037684 (Tex. Sept. 28, 2020) ..........................................................14

## STATEMENT OF INTEREST OF *AMICI CURIAE*[1]

*Amici Curiae* are some of the municipal actors that the Secretary asserts enforce, and in her telling are thereby the proper defendants to defend, the constitutionality of statewide electoral provisions that Appellees challenge. [Appellant's Br. at 19.]   This assertion naturally concerns *Amici* to which responsibility could be ascribed for violations of federal law alleged in the underlying suit.  *See Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978).  The district court concluded that Appellees stated cognizable claims, which is a question not now reviewable by this Court.  *See McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 415 (5th Cir. 2004) (targeting "the merits of Plaintiffs' claims, rather than Plaintiff's reliance on the doctrine of *Ex parte Young* to establish jurisdiction" is not permitted in a collateral order review).  Should this Court adopt the Secretary's unduly expansive view of Eleventh Amendment immunity, *Amici* would be forced to defend against a new a new class of suit to which they could afford little relief.

*Amicus Curiae* FORT BEND COUNTY, the ninth-most-populous county in Texas, is the second-largest County by population in the Houston-metropolitan region and one of the most diverse and fastest-growing counties in the country.  The

---

[1]     Federal Rule of Appellate Procedure 29(a)(6) sets the time for the filing of an amicus curiae for "no later than 7 days after the principal brief of the party being supported is filed."  FED. R. APP. P. 29(a)(6).  Due to extraordinary winter weather, this Court has extended all filing deadlines by 14 days.  5th Cir. Gen. Dkt. No. 2021-4 (Feb. 18, 2021).  The filing of this brief is well within that timeframe.

1

County's population has nearly tripled since 2000 while the ratio of its Anglo population has decreased to 29%, the remainder is almost evenly divided among Latinos, African-Americans, and East and South Asians. Fort Bend County has 483,000 registered voters in its 885 square miles.

Fort Bend's voter turnout in the last election exceeded 73%—the third best turnout percentage in the entire State of Texas. In 2016, Fort Bend voters cast 12,759 mail-in ballots, which was then a record. In November 2020, Fort Bend voters cast 28,835 mail-in ballots, constituting a staggering doubling of the prior record.[2] Elections in Fort Bend County are administered by a non-partisan elections administrator pursuant to subchapter B of Chapter 31 of the Elections Code.

*Amicus Curiae* HARRIS COUNTY is the most-populous county in Texas and third largest county in the United States. Harris County is geographically larger than Rhode Island, and its population is greater than that of 25 states. Chris Hollins served as interim Harris County Clerk during the 2020 general election and had the duty to administer elections for 2.4 million registered voters and a highly diverse electorate spread over 1,777 square miles. COVID-19 cases surged in Harris County

---

[2]     Fort Bend County has not always been at the forefront of voting rights. In 2009, the United States sued the County, principally asserting Voting Rights Act violations, and the County entered into a consent decree agreeing to federal monitoring, increased training, and electoral reporting to the Department of Justice. *See United States v. Fort Bend Cnty., Tex.*, No. 4:09-cv-01058 (S.D. Tex. Apr. 9, 2009).

in the weeks leading up to the elections, and even with its immense and world-renowned medical centers, Harris County hospitals were overwhelmed.

In part because of the pandemic, Harris County mail-in ballots increased from 99,507 in 2016 to 177,043 in 2020. Hollins took several initiatives to increase awareness of vote-by-mail options and received widespread praise from voting rights organizations. Harris County has since transferred responsibility for overseeing elections from the County Clerk to a newly created elections administrator position. While Hollins did not apply for this position, he remains a central figure in the legal issues raised in this *amici* brief.

*Amicus Curiae* DANA DEBEAUVOIR is the County Clerk of Travis County, Texas, and has served for more than 35 years overseeing elections administration in the fifth largest County in Texas. She has taken her elections administration expertise abroad as an advisor and observer to elections in then-emerging democracies in Bosnia, Kosovo, and South Africa. Travis County nearly matched Fort Bend County's voter participation rate at 71% of its 862,000 registered voters casting ballots. Travis County, however, exceeded Fort Bend's increase in mail-in ballots. Whereas Fort Bend doubled this category, Travis County more than trippled and nearly quadrupled: 2016 saw 20,090 ballots cast by mail; the figure for 2020 is 69,559.

All parties have consented to the filing of this brief.  *See* F<small>ED</small>. R. A<small>PP</small>. P. 29(a)(2).  No party's counsel authored this brief in whole or in part; moreover, no party, party's counsel, or person contributed money to fund the preparation or submission of this brief.  *See* F<small>ED</small>. R. A<small>PP</small>. P. 29(a)(4)(E).  Moreover, the undersigned counsels of record have endeavored to add novel arguments rather than merely recite those already advanced.  5th Cir. R. 29.2.

## SUMMARY OF THE ARGUMENT

Texas Secretary of State Ruth Hughs (the "Secretary") continues the Attorney General's misguided project to immunize themselves from ***any*** federal scrutiny while simultaneously seeking to misappropriate for themselves, long-standing discretionary acts of local officials in state court.  Meanwhile, the Secretary remains free to bring—and continues to bring—*ultra vires* actions against local election officials in the name of the State.  *See State v. Hollins*, No. 20-0729, 2020 WL 5919729, at *2, — S.W.3d — (Tex. Oct. 7, 2020); *see also Chambers-Liberty Cntys. Navigation Dist. v. State*, 575 S.W.3d 339, 349 (Tex. 2019) (*ultra vires* claim available if state official acted without legal authority).  The Secretary thereby advocates for a systemic mismatch where her power can only be checked in state, but not in federal court.

While the analysis under *Ex parte Young* is a question of federal law, state law directs the analysis by showing the scope of the powers of the official in

question. Such necessarily hinges on questions of state law. *Hollins* and *In re Green Party of Texas*, No. 20-0708, 2020 WL 5580156, at *4, — F.3d — (Tex. Sept. 18, 2020), are thus key to the analysis here. They show that the Texas Supreme Court believes the Secretary is ***willing*** to use her statutory muscle to obtain uniformity across provisions of the Texas Election Code that nowhere mention her; and they show that the highest state court in Texas thinks that the Secretary's suits to obtain such uniformity are a ***legally appropriate*** use of said muscle under the Code. That same authority sufficiently connects the Secretary to the enforcement of the Challenged Provisions here under *Ex parte Young*.

Texas law confirms the Secretary's responsibilities to ensure uniformity with respect to the provisions challenged by Appellees. *See* TEX. ELEC. CODE § 31.003 ("uniformity clause"). And the Secretary has robustly participated in matters before the Texas Supreme Court (omitted from her brief) to compel the actions of local election officials related to ballot distribution and processing of mail-in ballots, which further demonstrates the Secretary's connection to the Challenged Provisions.

The Secretary's position that plaintiffs like Lewis should sue only counties, [Appellant's Br. at 19], would create collateral consequences undermining long-standing legal principles. Even if Appellees obtained prospective relief regarding one or more of the Challenged Provisions at issue in this suit against one or more counties, any variation in the relief obtained and implemented across counties

5

without uniform guidance from the Secretary could create complications.  Problems of a constitutional dimension could arise if one's vote, in effect, might be counted differently depending on their county of residence.  The remedy of prospectively enjoining the Secretary from enforcing unconstitutional statutory law or issuing unconstitutional guidance is the only proper manner to vindicate federal law.

**ARGUMENT**

Appellees filed suit under 42 U.S.C. § 1983 challenging various Texas election laws on federal constitutional grounds.  Balancing the sovereign interests of the States against the Supremacy of federal law, the Supreme Court in *Ex parte Young* allowed suits against an appropriate state actor for prospective relief.[3]  The Secretary's arguments concerning her lack of "connection to enforcement" of provisions of the Texas Election Code Appellees challenge so starkly depart from clearly established law that *Amici* are compelled to start the analysis anew.  Texas constitutional and statutory law strongly presume that for challenges to Texas elections laws, the Secretary is a proper defendant.

Nothing regarding the particular provisions raised in this case rebut this presumption.  Texas law squarely makes the Secretary a proper defendant in a

---

[3]    Coincidently, the Texas Supreme Court relies on the remedial limitations imposed by *Ex parte Young* and its progeny in determining the remedies permissible in *ultra vires* actions.  *City of El Paso v. Heinrich*, 284 S.W.3d 366, 373–77 (Tex. 2009).

federal constitutional challenge to Texas election laws and regulations of statewide uniformity. The Secretary's actions in state court against counties including *amici* compel the Secretary's status as a defendant here. The Texas Supreme Court vindicates the "sovereign's injury" through *ultra vires* actions. Respecting provisions from the same chapter of the Election Code, the Secretary guided the Texas Supreme Court's determinations.

**I.    THE SECRETARY IS PRESUMPTIVELY THE APPROPRIATE STATE OFFICIAL UNDER *EX PARTE YOUNG* TO CHALLENGE A TEXAS ELECTION LAW**

A.    To Ensure the Supremacy of Federal Constitutional Law, *Ex parte Young's* Fiction Contemplates a Proxy for the State

The Eleventh Amendment to the Federal Constitution "enacts a sovereign immunity from suit, rather than a nonwaivable limit on the Federal Judiciary's subject-matter jurisdiction." *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267 (1997).[4] The Supreme Court understands "[t]he Eleventh Amendment to confirm the structural understanding that States entered the Union with their sovereign immunity intact, unlimited by Article III's jurisdictional grant." *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253 (2011).

---

[4] The Supreme Court has also admonished lower courts that the principle of sovereign immunity embodied by the Eleventh Amendment "is a constitutional limitation on the federal judicial power established in Article III." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984) (citing *Ex parte State of N.Y. No. 1*, 256 U.S. 490, 497 (1921)).

Nevertheless, under the exception articulated in *Ex parte Young*, 209 U.S. 123 (1908), "[a] federal court is not barred by the Eleventh Amendment from enjoining state officers from acting unconstitutionally, either because their action is alleged to violate the Constitution directly or because it is contrary to a federal statute or regulation that is the supreme law of the land."   17A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, EDWARD H. COOPER & VIKRAM DAVID AMAR, FEDERAL PRACTICE AND PROCEDURE § 4232 (3d ed. 2007).  *Ex parte Young* constitutes "a legal fiction [allowing] suits for injunctive or declaratory relief against individual state officials acting in violation of federal law."  *City of Austin v. Paxton*, 943 F.3d 993, 999 (5th Cir. 2019), *cert. denied sub nom. Austin, Tex. v. Paxton*, No. 19-1441, 2021 WL 78079 (U.S. Jan. 11, 2021).

This "authority-stripping theory of *Young* is a fiction that has been narrowly construed," *Pennhurst*, 465 U.S. at 114 n. 25, but "a federal court command[ing] a state official to do nothing more than refrain from violating a federal law * * * is not the State for sovereign-immunity purposes."  *Va. Office for Prot. & Advocacy*, 563 U.S. at 255 (2011).  In fact, "where prospective relief is sought against individual state officers in a federal forum based on a federal right, the Eleventh Amendment, in most cases, is not a bar."  *Coeur d'Alene Tribe*, 521 U.S. at 276–77.  Accordingly, states typically have an official that is amenable to suit under *Ex parte Young*. Otherwise, there would not be a forum to vindicate the supremacy of federal law.

8

B.  In a Constitutional Challenge to a Texas Election Law, the Secretary Generally Serves as that Proxy

The Texas Constitution places the Secretary at the center of elections for statewide executive officers.  TEX. CONST. art. 4, § 3 ("The returns of every election for said executive officers * * * shall be * * * transmitted by the returning officers prescribed by law to the seat of government, directed to the secretary of state, who shall deliver the same to the speaker of the house or representatives * * * *").  This express responsibility first appeared in the 1876 Constitution.[5]  "[T]he framers of our constitution, influenced by the political philosophy of the Jacksonian era and the despotic control of the reconstruction governor, deliberately chose to decentralize executive authority."  *Saldano v. State*, 70 S.W.3d 873, 877 (Tex. Crim. App. 2002) (internal quotation marks omitted).  This provision has not changed since.  Interpretation of the Texas Constitution requires consideration of "the historical context in which it was written [and] the relation of the provision to the law as a whole, the understanding of other branches of government."  *Davenport v. Garcia*, 834 S.W.2d 4, 30 (Tex. 1992) (Hecht J., concurring, joined by Cook and Cornyn, JJ.).  It would accordingly be incongruent with state constitutional law to conclude, as the Secretary urges, that provisions directly affecting the selection of statewide

---

[5]  *Compare* TEX. CONST. of 1876 art. 4, § 3 *with* TEX. CONST. of 1869 art. 4, § 3; TEX. CONST. of 1866 art. 5, § 3; TEX. CONST. of 1861 art. 5, § 3; TEX. CONST. of 1845 art. 5, § 3.

executive officers rest with the local election officials of the 254 counties when the framers placed this specific provision in the Texas Constitution as a specific enumerated power of the Secretary's.

The Texas Election Code likewise places the Secretary at the center of Texas elections by confirming that she "shall obtain and maintain uniformity in the application, operation, and interpretation of [the Texas Election Code] and of the election laws outside this code." TEX. ELEC. CODE § 31.003 (the "uniformity clause"). Such includes preparing "detailed and comprehensive written directives and instructions relating to and based on [those laws, which] [t]he secretary shall distribute * * * to the appropriate state and local authorities having duties in the administration of these laws." *Id*.

Fifth Circuit precedent confirms the Secretary's proper status as a defendant under the *Ex parte Young* exception to sovereign immunity for a challenge to a Texas election-related statute or regulation of statewide applicability. *OCA-Greater Hous. v. Texas*, 867 F.3d 604, 613 (5th Cir. 2017) ("Sovereign immunity has no role to play here."); *Lightbourn v. Cnty. of El Paso, Tex.*, 118 F.3d 421, 430 (5th Cir. 1997) (Secretary proper defendant in a challenge to "laws that specifically govern elections"). In *Lightbourn*, this Court described the uniformity clause as "requiring the Secretary to take action with respect to elections." *Lightbourn*, 118 F.3d at 429.

As *Lightbourn* itself shows, however, a plaintiff's reference to election law does not necessarily render the Secretary a proper *Ex parte Young* defendant. In *Lightbourn*, this Court considered whether the Secretary was responsible for El Paso County's failure to comply with the Americans with Disabilities Act ("ADA") in the process of carrying out an election, based on the uniformity clause's grant of authority to her over "election laws outside [the Texas Election] code." *Id*. at 427–29. Relying on the uniformity clause and the Secretary's grant of authority under § 31.005, which empowers her to initiate enforcement actions through the Attorney General, the district court found the Secretary after a bench trial. *Id*. at 424, 427–28.

The Fifth Circuit disagreed. *Id*. at 427–32. The Fifth Circuit held that the uniformity clause only applies to "election laws," which the ADA is not. *Id*. at 430–31. "Rather, 'election laws' only covers laws that specifically relate to elections, such as the Voting Rights Act of 1965, 42 U.S.C. §§ 1972–1973, or the Voting Accessibility for the Elderly and Handicapped Act, 42 U.S.C. § 1973ee–1." *Id*. at 430. Further, the Secretary's culpability failed from an evidentiary perspective. Regarding visually impaired voters, the Fifth Circuit concluded that plaintiffs did not adduce sufficient evidence that the Secretary was presented with and failed to approve a voting system—from which county election officials could have selected—that would have allowed visually impaired voters a completely secret

ballot. *Id*. at 431. As to physically impaired voters, the Election Code placed the accessibility issues of polling places squarely into the hands of commissioners court. *Id*. at 431–32.[6] As described in Part II, however, the provisions at issue in this case squarely implicate the Secretary's role in enforcement of the Texas Election Code.

## II.    TEXAS LAW CONTRADICTS THE SECRETARY'S ASSERTION THAT SHE DOES NOT HAVE A SUFFICIENT CONNECTION TO THE ENFORCEMENT OF THE CHALLENGED PROVISIONS

For the *Ex parte Young* exception to apply, the state official must "have some connection with the enforcement of the act." *Ex parte Young*, 209 U.S. at 157. The four "Challenged Provisions" are in Texas Election Code Chapters 86 and 87, respectively titled "Conduct of Voting by Mail" and "Processing Early Voting Results."[7] Chapters 86 and 87 are part of Subtitle A of Title 7 of the Election Code, which are both entitled "Early Voting." By any reasonable reading, "Early Voting," at a minimum, must "specifically relate to elections * * * *." *Lightbourn*, 118 F.3d at 430.

Citing *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 181 (5th Cir. 2020) ("*TDP*") *cert. denied*, No. 19-1389, 2021 WL 78479 (U.S. Jan. 11, 2021), the

---

[6]    "The commissioners court, consisting of the county judge and four county commissioners, is the governing and administrative body of a county in Texas." *Rheuark v. Shaw*, 628 F.2d 297, 301 n. 5 (5th Cir. 1980).

[7]    The Challenged Provisions are (1) the Receipt Deadline, TEX. ELEC. CODE § 86.007; (2) Signature Match Without Cure, TEX. ELEC. CODE § 87.027; (3) the Ballot Return Assistance Ban, TEX. ELEC. CODE § 86.006; and (4) the Postage Tax, TEX. ELEC. CODE § 86.002.

Secretary tries to avoid this conclusion by advocating a two-prong *Ex parte Young* standard requiring "the particular duty to enforce the statute in question" and "a demonstrated willingness to exercise that duty."  [Appellant's Br. at 12.]   The Secretary misreads *TDP*.  *TDP* did not address the Secretary's ***willingness*** to enforce the provision challenged there.[8]

Regardless, "a 'scintilla of enforcement by the relevant state official with respect to the challenged law' will do [to trigger *Ex Parte Young*]."  *TDP*, 978 F.3d at 180 (5th Cir. 2020) (quoting *City of Austin*, 943 F.3d at 1002) (internal quotation marks omitted).   The Secretary more than meets that standard. The Secretary routinely engages in or authorizes enforcement-related activity to "maintain uniformity in the application, operation, and interpretation of [the Texas Election Code]"—including over provisions of the Code that nowhere mention her by name.  TEX. ELEC. CODE § 31.003.   Indeed, the Secretary robustly exercises this authority with respect to Chapter 86 of the Texas Election Code (Conduct of Voting by Mail).

---

[8]    *TDP* quotes *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014), which in turn quotes from the plurality opinion in *Okpalobi v. Foster*, 244 F.3d 405, 416 (5th Cir. 2001) (en banc) (plurality op.).  *Okpalobi*'s "Eleventh Amendment analysis is not binding precedent."  *K.P. v. LeBlanc*, 627 F.3d 115, 124 (5th Cir. 2010).  *Morris* stands for the unremarkable proposition that the Executive Director of the Texas Department of Criminal Justice is the proper defendant (rather than the Governor) in prisoner litigation—a similar point to *Amici's* argument, *supra* I.A, that *Ex parte Young* requires a proxy for the State.

In *TDP*, this Court analyzed and held that the Secretary has the requisite connection to the design of application forms for mail-in voting. *Id*. at 180.

13

*Amici*— purportedly some of the "local officials" who enforce Chapters 86 and 87, and who would be burdened by future lawsuits if the Secretary's position prevails [*see* Appellant's Br. at 19]—strongly disagree that the Secretary's practice in state courts aligns with the position she asserts to this Court. Some examples related to early voting in the past election cycle illustrate this point.

On August 25, 2020, Harris County Clerk Chris Hollins announced his intent to send an application to vote by mail to every registered voter in Harris County under the age of 65, which unlike those 65 or older, is not a presumptively permissible category for voting by mail. *See* Tex. Elec. Code § 82.003. Two days later, Keith Ingram, the Director of Elections for the Secretary, sent a letter to Hollins demanding retraction of the plan on pain of a lawsuit because such "would be contrary to [the Secretary of State's] guidance." *Hollins*, 2020 WL 5919729, at *2. Chris Hollins—supported by Fort Bend County and the City of Houston—asserted that his plan was well within his discretion as a county official. Brief of *Amici Curiae* Fort Bend County and City of Houston, State v. Hollins, No. 20-0729, 2020 WL 5919729, — S.W.3d — (Tex. Oct. 7, 2020) (No. 20-0729) 2020 WL 6037684 (Tex. Sept. 28, 2020).

The Texas Supreme Court disagreed. At the Secretary's behest, it ordered the trial court to enjoin Hollins from sending "an application to vote by mail to a voter who has not requested one" because it said, following the Secretary's argument, that

"a clerk's doing so results in irreparable injury to the State." *Hollins*, 2020 WL 5919729, at *7. The Texas Supreme Court expressly relied on the uniformity clause of the Election Code, *id*. at *5 (citing TEX. ELEC. CODE § 31.003), as "reflecting the Legislature's intent that election laws operate uniformly throughout the State." *Id*. Relying on § 31.003, the Texas Supreme Court reasoned that § 84.013 of the Election Code allowed the Secretary to restrict an election official's distribution of applications to vote by mail even though she could not so restrict private organizations. *Id*. at **5–6.[9] *Hollins*, therefore, provides the Secretary with broad authority over county mail-voting operations based not on an express statutory provision, but rather on the Election Code's uniformity clause.

In a second example, the Texas Supreme Court deferred to the Secretary's interpretation of the provisions of the Election Code governing Chapter 86, "Conduct of Voting by Mail." Despite the fact that § 161.008(b) of the Election Code requires the Secretary's written certification of "the official general election ballot prepared in each county" by the 68th day preceding any general election (August 28, 2020), the Texas Supreme Court ordered restoration of certain Green Party candidates to the ballot after the 68th day. *In re Green Party of Texas*, No. 20-0708, 2020 WL 5580156, at *4, — F.3d — (Tex. Sept. 18, 2020). The Texas

---

[9] Chapter 84 of the Election Code, which is entitled "Application for Ballot," also is part of Subtitle A of Title 7 of the Election Code.

Supreme Court adopted the Secretary's interpretation "that changes to the ballot are not precluded by statute and relief is still possible." *Id*.[10]

The Attorney General's filings on behalf of the Secretary in *In re Green Party* are particularly informative to the Secretary's enforcement position with respect to Chapter 86 of the Election Code, under which three of the four provisions at issue in this suit fall. The Secretary noted that counties "distribute corrected mail-in ballots according to the procedures set out in section 86.009 of the Texas Election Code." Letter Brief of September 15, 2020, In re Green Party of Texas, 2020 WL 5580156 (Tex. Sept. 18, 2020) (No. 20–0708) at 2 (Tex. Sept. 15, 2020). "[T]he Secretary issued an amended certification that included the previously omitted three Green Party candidates." Letter Advisory of September 16, 2020, In re Green Party of Texas, 2020 WL 5580156 (Tex. Sept. 18, 2020) (No. 20–0708) at 2 (Tex. Sept. 16, 2020). Even though § 86.009 does not reference the Secretary, she "advised the county election administrators of this Court's Order, the amended certification, and their obligation to include those candidates on their ballots." *Id*. at 1–2. The Secretary admonished that "[a] county election official's failure to include a candidate entitled to be on the ballot is a criminal offense." *Id*. at 2 (citing TEX. ELEC. CODE § 52.004).

---

[10]     The Texas Supreme Court granted the writ of mandamus by docket entry on September 15, 2020, with an opinion to follow.

The above examples demonstrate the broad view that the Secretary takes of her duty to ensure uniformity amongst counties—even among provisions and over voting actions that nowhere mention her by name—through challenges against county officials in state court.  *See* TEX. ELEC. CODE § 31.003.  Here, the Secretary asserts she does not have "*any* relevant duty" to direct "local election officials in the distribution and processing of mail-in ballots."  [Appellant's Br. at 18 (emphasis in the original).]  *Hollins* demonstrates that the highest authority on state law in Texas views § 31.003 differently, which *Amici* believe can and should be interpreted consistently by this Court so they do not unfairly face suit here and in future election litigation where the Secretary is the proper defendant.

"Though there is a division of responsibilities [with county clerks], the Secretary has the needed connection."  *Id*. at 180.[11]  Indeed, the Secretary's actual

---

[11]    There is no support in this Court's precedents for the Secretary's argument that *Ex parte Young* prohibits her from being a proper defendant with other governmental actors.  [Appellant's Br. 15–16.]  In *Hopwood v. Texas*, this Court included dozens of state officials in prohibiting the use of racial preferences in considering admission to the University of Texas at Austin Law School.  78 F.3d 932, 938 n. 13 (5th Cir. 1996), *abrogated on other grounds by Grutter v. Bollinger*, 539 U.S. 306 (2003) (defendants included members of the University of Texas Board of Regents the members of the board; the President of the university, the dean of the law school, and the Chairman of the Admissions Committee).  One of these defendants, Mark Yudoff, unsuccessfully sought to use *Ex parte Young* to extricate himself from a suit challenging a provision to which his connection was far more attenuated than the Secretary's connection here.  *Coal. to Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1134 (9th Cir. 2012) (challenge to California constitutional provision prohibiting affirmative action).

actions far exceed a mere allegation. *Cf. City of Austin*, 943 F.3d at 1000 (concluding as insufficient the City of Austin's mere allegation of the Attorney General's "habit of suing or intervening in litigation against the City involving municipal ordinances and policies to enforce the supremacy of state law.").[12]

## III. THE SECRETARY'S POSITION, IF ADOPTED, WOULD HAVE SIGNIFICANT COLLATERAL CONSEQUENCES

The consequences of the Secretary's position—that plaintiffs like Lewis should sue only counties, not her [Appellant's Br. at 19]—are troubling.  Appellees note the impracticalities of suing all 254 Texas counties.  [Appellees' Br. at 47].  But it is more than impracticable and an unnecessary burden on hundreds of counties' limited public resources.  It would nullify the federal remedy and could well spawn violations of the Equal Protection Clause of the Fourteenth Amendment.

///

///

///

---

[12]    The City of Austin challenged a Texas law barring municipalities and counties from "adopting or enforcing an ordinance or regulation that prohibits a landlord from refusing to lease or rent a housing accommodation to a person because the person's lawful source of income to pay rent includes funding from a federal housing assistance program." *City of Austin*, 943 F.3d at 996.  The challenged state statute thereby provided landlords a ***defense*** to any enforcement action brought by a municipality seeking to enforce its contrary local ordinance. *Id*. at 1000 n. 1.  This Court deemed the Attorney General's hypothetical involvement in the enforcement action, which would be in ***state court***, to be an insufficient connection under *Ex parte Young*. *Id*. at 1001–03.

A.    The § 1983 Plaintiff's Pyrrhic Victory: Probable Ancillary Litigation and Improbable Attorney's Fees

1.    *The Secretary's Approach Invites Equal Protection Violations*

*Amici* put aside the impracticalities of joinder of 254 counties and/or their clerks in a single matter in a single division of one of this state's four federal districts. The Equal Protection Clause of the Fourteenth Amendment requires "equality among citizens in the exercise of their political rights." *Moore v. Ogilvie*, 394 U.S. 814, 819 (1969). If the Challenged Provisions are enforced differently among the 254 counties in the State, some counties could impermissibly have "greater voting strength" than others. *Id*. For example, if some counties were ordered by a court to offer a cure period for mismatched signatures and others were not under the same obligation, that could lead to ballots being discarded in counties without a cure process that might otherwise have a chance to be counted in counties which were required to offer cure. The Equal Protection Clause will not countenance the strength of a vote varying based on an arbitrary factor like county of residence. *See Gray v. Sanders*, 372 U.S. 368, 379 (1963).

The Secretary will no doubt respond that county-by-county variances would be statistically insufficient, but it cannot show that would be the case. "Texas has 254 counties, more than any other state," which "range in population from 134 people to over 4 million and in size from 149 square miles to over 6,000." *Hollins*, 2020 WL 5919729 at *1. According to the Supreme Court of the United States it is

19

problematic to have "one person in the smallest rural county be given twice or 10 times the voting power of another person merely because he lives in a rural area or because he lives in the smallest rural county." *Reynolds v. Sims*, 377 U.S. 533, 557 (1964) (quoting *Gray*, 372 U.S. at 379).  Given the rather large disparities between counties in Texas noted above, it is not beyond the realm of possibilities that differing implementations of the Challenged Provisions could give a voter in Loving County—the smallest county in Texas—the practical effect of having at least twice the voting strength in a given election of a voter in Harris County—the largest county in Texas and third-largest in the United States.  Under *Gray* and *Reynolds*, a disparity of this magnitude could be held to violate the Equal Protection Clause.

2.     *The Secretary's Approach Invites Underenforcement By Nullifying Attorney's Fees*

The Secretary's view would likely foreclose a plaintiff's ability to recover attorney's fees pursuant to 42 U.S.C. § 1988(b), which could diminish the ability of plaintiffs like NAACP to file lawsuits seeking to promote voting rights, including with regard to the Challenged Provisions.  Municipal liability requires the "execution of a government's policy or custom * * * made * * * by those whose edicts or acts may fairly be said to represent official policy."  *Monell*, 436 U.S. at 694.  The Supreme Court stated "only those municipal officials who have 'final policymaking authority' may by their actions subject the government to § 1983 liability."  *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988).

A conclusion that any of the Challenged Provisions is unconstitutional would not reflect a municipal policy causing the deprivation. *See L.A. Cnty. v. Humphries*, 562 U.S. 29, 31–33 (2010) (state statute requiring law-enforcement agencies to report all allegations of child abuse to the California Department Justice that are "not unfounded," even if they are "inconclusive or unsubstantiated," for inclusion on a central index constituted a state and not a municipal policy that caused the deprivation of plaintiffs' Fourteenth Amendment rights).

The Supreme Court in *Humphries* held that the fact that a municipal policy did not cause the deprivation at issue precluded any award of monetary damages or attorney's fees against the municipality. *Id*. at 37.  Consequently, the Ninth Circuit was forced to reverse its prior order that the County of Los Angeles pay 10% of Appellants' attorney's fees. *Humphries v. Cnty. of L.A.*, 649 F.3d 1077 (9th Cir. 2011) (Mem.).

The Challenged Provisions in this suit similarly either reflect or are compelled by state statute.  In any suit where the municipality's policy conforms to the state law, plaintiffs could not be awarded attorney's fees.  As *Humphries* demonstrates, appropriate attorney's fees may only be awarded against the state actor as the *Ex parte Young* proxy for the State.  This Court should not inadvertently choose a course that could lead to underenforcement of voting rights.

21

B.   The Secretary's Alternative Argument About the Structure of Appellees' Sought Injunction is Substantially Flawed and Should be Rejected as Not Properly Within this Court's Appellate Jurisdiction

The Secretary seeks reversal on the alternative ground that Appellees' sought remedy is an impermissible mandatory injunction, which the Secretary asserts interferes with Texas's sovereign immunity. [Appellant's Br. at 24–30.] Under this reasoning, the Secretary's connection to the enforcement of the Challenged Provisions would not be important. Rather, the Secretary asserts that the Eleventh Amendment prohibits a federal court granting the requested injunctive relief against her because it would interfere with public administration (but, of course, would not interfere with public administration of the counties and its officials).[13] This argument is flawed procedurally and substantively.

1.   *The Secretary's Argument May Not Be Reviewed in this Posture*

Arguments "target[ing] the merits of Plaintiffs' claims, rather than Plaintiff's reliance on the doctrine of *Ex parte Young* to establish jurisdiction" are not permitted in appellate review of a collateral order. *Hawkins*, 381 F.3d at 415; *see also Williams on Behalf of J.E. v. Reeves*, 954 F.3d 729, 736 (5th Cir. 2020) (prohibiting analysis

---

[13]   *Amici* agree that the *Ex parte Young* exception is limited to injunctions "prevent[ing] [a state official] from doing that which he has no legal right to do." *Ex parte Young*, 209 U.S. at 159.   It does not authorize injunctions directing "affirmative action." *Id.*

of the merits of claim in evaluating sovereign-immunity dismissal). The propriety of the injunctive relief sought in Appellees' operative complaint is not a matter that is presently within the appellate jurisdiction of this Court. *Cf. City of Austin*, 943 F.3d at 997–1004 (collateral-order appeal reviewed the district court's *Ex parte Young* conclusion). Even if this Court were inclined to agree with the merits of the Secretary's position, which it should not, the Court would exceed its appellate jurisdiction by doing so in this case.

2.    *This Court Should Reject the Secretary's Invitation to Limit the Scope of Mandatory Injunctions that Federal Courts may Issue Against State Officials*

The Secretary presupposes that should this Court remand this case back to the district court, the district court will issue an affirmative injunction instructing the secretary in the exercise of her "*discretionary* functions." [Appellant's Br. at 26 (citing *Richardson v. Texas Sec'y of State*, 978 F.3d 220, 241 (5th Cir. 2020)).] As Appellees do not request that; as they note, the relief sought in *Richardson* is markedly different from the relief they seek. [Appellees' Br. at 43–45.]

There is, however, another important difference. *Richardson* is a published motions panel decision, which is not precedent. *See*, *e.g.*, *Northshore Dev., Inc. v. Lee*, 835 F.2d 580, 583 (5th Cir. 1988); *Fischer v. United States*, 759 F.2d 461, 463 (5th Cir. 1985); *E.E.O.C. v. Neches Butane Prods. Co.*, 704 F.2d 144 (5th Cir. 1983). The *Richardson* concurrence strongly cautioned against purporting to decide issues

of "standing and the reach of *Ex parte Young*, core principles of federalism," which a motions panel cannot use to change this Court's jurisprudence. *Richardson*, <u>978 F.3d at 244</u> (Higginbotham, J., concurring). *Richardson* and other motions panel decisions—*i.e.*, "essentially written in sand with no precedential value," *id*. at 244—should not constrain the Court here.

*Richardson*, is an October 2020 motions panel order staying a district court's injunction pending appeal enjoining the Secretary from signature-verification practices the district court there deemed discriminatory. <u>978 F.3d at 227</u>. *Richardson* builds on two other Beaujolais-aged published motions panel orders, including an order from one week prior, *id*. at 228, 236–41 (citing *Tex. League of United Latin Am. Citizens v. Abbott*, <u>978 F.3d 136</u> (5th Cir. 2020) ("*Tex. LULAC*"),[14] and another three weeks prior, *id*. at 228 (citing *Tex. All. for Retired Ams. v. Hughs*, <u>976 F.3d 564</u> (5th Cir. 2020) (per curiam).[15] This feedback loop of non-precedential dispositions staying preliminary injunctions have all been mooted by the passage of

---

[14]    The district court enjoined Governor Abbott's October 1, 2020, Proclamation restricting mail-in ballot delivery to one designated location per county for the 2020 general election. *See Tex. LULAC*, <u>978 F.3d at 141</u>–43.

[15]    The district court enjoined enforcement of Texas legislation eliminating straight-ticket voting. *Tex. All. for Retired Ams.*, <u>976 F.3d at 565</u>–56. The motions panel failed to state that the district court's injunction only applied to the 2020 general election. *See Tex. All. for Retired Ams. v. Hughs*, No. 5:20-CV-128, <u>2020 WL 6601593</u>, at *1 (S.D. Tex. Oct. 26, 2020).

the election subject to said injunctions.  *See Richardson*, 978 F.3d at 227; *Tex. LULAC*, 978 F.3d at 141–43 & *Tex. All. for Retired Ams.*, 2020 WL 6601593, at *1.

Last, the yet-to-be-issued preliminary injunction sought by Appellees here is far more modest than what a merits panel of this Court recently rejected.  *See Mi Familia Vota v. Abbott*, 977 F.3d 461 (5th Cir. 2020).  If anything, *Amici* see the Secretary's point regarding the provision at issue in *Mi Familia Vota* since that provision—Texas Election Code § 43.007—is optional.  Section 43.007 mandates the use of electronic voting machines only for counties choosing to participate in Texas's Countywide Polling Place Program such that injunctive relief against the Secretary, rather than the counties choosing to participate, presents a more arguable example of impermissible mandatory injunctive relief.  *Mi Familia Vota*, 977 F.3d at 467–69.  Chapters 86 and 87 of the Texas Election Code, which are the sections of the Texas Election Code at issue in this litigation, do not.  Rather, these chapters implicate the "bedrock principle that disenfranchising citizens is not a fallback to a failure to persuade."  *Richardson*, 978 F.3d at 244 (Higginbotham, J., concurring).

## CONCLUSION

For the foregoing reasons, the district court's collateral order denying the Secretary's motion to dismiss on the grounds of sovereign immunity should be affirmed and the case promptly remanded.

DATED:        FEBRUARY 24, 2021                RESPECTFULLY SUBMITTED,


                                              */s/ Justin C. Pfeiffer*

BRIDGETTE SMITH-LAWSON                         JUSTIN CARL PFEIFFER
FORT BEND COUNTY ATTORNEY                      *Counsel of Record*
                                              ASSISTANT COUNTY ATTORNEY
                                              COUNTY ATTORNEY'S OFFICE
                                              FORT BEND COUNTY, TEXAS
                                              401 Jackson Street, 3rd Floor (Office)
                                              301 Jackson Street (Mail)
                                              Richmond, Texas 77469
                                              [Tel.] (281) 341-4555
                                              justin.pfeiffer@fortbendcountytx.gov

COUNSEL FOR *AMICUS CURIAE* FORT BEND COUNTY, TEXAS


                                              */s/ Seth Hopkins*

CHRISTIAN D. MENEFEE                           SETH HOPKINS
HARRIS COUNTY ATTORNEY                         *Counsel of Record*
JONATHAN FOMBONNE                              COUNTY ATTORNEY'S OFFICE
DEPUTY COUNTY ATTORNEY                         HARRIS COUNTY, TEXAS
                                              1019 Congress St., 15th Floor
                                              Houston, TX 77002
                                              [Tel.] (713) 755-5585
                                              Seth.Hopkins@cao.hctx.net

COUNSEL FOR *AMICUS CURIAE* HARRIS COUNTY, TEXAS

/s/ Sherine E. Thomas

DELIA GARZA
TRAVIS COUNTY ATTORNEY

SHERINE E. THOMAS
    *Counsel of Record*
LESLIE W. DIPPEL
COUNTY ATTORNEY'S OFFICE
TRAVIS COUNTY, TEXAS
P.O. Box 1748
Austin, Texas 78767
[Tel.] (512) 854-9513
sherine.thomas@traviscountytx.gov

COUNSEL FOR *AMICUS CURIAE* DANA DEBEAUVOIR, TRAVIS COUNTY CLERK

## SIGNATURE CERTIFICATION

By and through their counsel of record, *Amici* have agreed to the joint filing of this brief. I, hereby, certify that I received the permission of the above-designated counsel of record to affix their electronic signature to this instrument.

DATED:      FEBRUARY 24, 2021       */s/ Justin C. Pfeiffer*
                                    JUSTIN CARL PFEIFFER

## CERTIFICATE OF ELECTRONIC COMPLIANCE

I certify that (1) the required privacy redactions have been made, 5th. Cir. R. 25.2.13; (2) the electronic submission is an exact copy of the paper document, 5th Cir. R. 25.2.1; and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses. I will mail the correct number of paper copies of the foregoing document to the Clerk of the Court when requested.

DATED:      FEBRUARY 24, 2021       */s/ Justin C. Pfeiffer*
                                    JUSTIN CARL PFEIFFER

**CERTIFICATE OF COMPLIANCE WITH THE TYPE-VOLUME LIMIT**

Pursuant to Federal Rule of Appellate Procedure 32(g) and Fifth Circuit Rules 32.2 and 32.3, I certify that the foregoing brief of plaintiff-appellant complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B).

1.    This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 29(a)(5) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f):

      X    this brief contains *exactly* 6,297 words, or

      ___    this brief uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by Federal Rules of Appellate Procedure 32(f).

2.    This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because:

      X    this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Times New Roman, 14 point, or

      ___    this brief has been prepared in a monospaced typeface using

      _____ with _____.

DATED:    FEBRUARY 24, 2021          */s/ Justin C. Pfeiffer* _____
                                       JUSTIN CARL PFEIFFER

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Appellate Procedure 25(d)(3) and Fifth Circuit Rule 25.2.5, I hereby that on February 24, 2020, I electronically filed the

**BRIEF OF *AMICI CURIAE* FORT BEND COUNTY, TEXAS; HARRIS COUNTY, TEXAS; AND DANA DEBEAUVOIR, TRAVIS COUNTY CLERK IN SUPPORT OF PLAINTIFFS-APPELLEES**

with the Clerk of the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system.

DATED:    FEBRUARY 24, 2021        */s/ Justin C. Pfeiffer*
                                JUSTIN CARL PFEIFFER