

# KEN PAXTON
ATTORNEY GENERAL OF TEXAS

Beth Klusmann  
Assistant Solicitor General

(512) 936-1914  
Beth.Klusmann@oag.texas.gov

June 9, 2021

**Via E-Filing**

Mr. Lyle Cayce, Clerk  
United States Court of Appeals for the Fifth Circuit

    **Re:**    No. 20-50654, *Linda Jann Lewis, et al v. Ruth Hughs*

Dear Mr. Cayce:

    Appellant Ruth Hughs, the Texas Secretary of State, submits additional authority pursuant to Federal Rule of Appellate Procedure 28(j).

    The main issue on appeal is whether the Secretary is immune from this suit—that is, whether Plaintiffs have successfully invoked the *Ex parte Young* exception to sovereign immunity. Appellant's Br. 12-24; Reply Br. 1-15. Two recent decisions from this Court confirm the Secretary's position: she is immune, and the suit should be dismissed.

    In *Texas Democratic Party v. Hughs*, 997 F.3d 288 (5th Cir. 2021) (Ex. A), the plaintiffs sued the Secretary, seeking to enjoin a law that regulated the times that "temporary branch" polling places must be open during early voting. The Court concluded *Ex parte Young* did not apply because the Secretary did not have a sufficient connection to Texas's early voting laws, including the establishment of temporary branch polling places. *Id.* at 291. Instead, those laws were implemented and enforced by local election officials. *Id.* ("The Secretary plays no role.").

    The Court also held that the Secretary was immune for similar reasons in *Texas Democratic Party v. Hughs*, No. 20-50667, 2021 WL 2310010 (5th Cir. June 4, 2021) (per curiam) (Ex. B), which concerned the requirement that individuals provide "wet signatures" on voter-registration applications. Despite the Secretary's press release stating that online voter registration was not permitted, the Court determined that it was county registrars, not the Secretary, who reviewed voter-registration applications, leaving the Secretary without a connection to enforcement. *Id.* at *2-3. That connection was also lacking because the plaintiffs' pleadings failed

Letter to Mr. Cayce, Clerk
June 9, 2021
Page 2

to show that (1) the Secretary's design of the voter-registration application required a wet signature, or (2) the Secretary had taken or threatened to take action under Texas Election Code section 31.005 to protect voting rights. *Id.* at *3-4.

    Those cases require dismissal here. The challenged statutes are enforced by local officials, none of the Secretary's duties connects her to enforcement of challenged laws, and there is no evidence that the Secretary has enforced or threatened to enforce them. Appellant's Br. 12-24; Reply Br. 1-15. The Secretary is immune from suit.

                                      Respectfully submitted.

                                      /s/ Beth Klusmann
                                      BETH KLUSMANN
                                      Assistant Solicitor General

                                      Counsel for Defendant-Appellant

cc: All counsel of record (via CM/ECF)

# Exhibit A

997 F.3d 288
United States Court of Appeals, Fifth Circuit.

TEXAS DEMOCRATIC PARTY; Democratic Senatorial Campaign Committee; Democratic Congressional Campaign Committee; Emily Gilby; Terrell Blodgett, Plaintiffs—Appellees,
v.
Ruth HUGHS, in her official capacity as the Texas Secretary of State, Defendant—Appellant.

No. 20-50683
|
FILED May 7, 2021

**Synopsis**
**Background:** Voters and political organizations brought action against Texas Secretary of State, seeking to enjoin enforcement of state law that barred counties from operating mobile or pop-up early voting locations. The United States District Court for the Western District of Texas, Lee Yeakel, J., 2020 WL 5745915, denied Secretary's sovereign immunity defense. Secretary appealed.

**[Holding:]** The Court of Appeals, Don R. Willett, Circuit Judge, held that Secretary was not sufficiently connected to the enforcement of the law at issue, and thus exception of Ex parte Young to state sovereign immunity did not apply to allow suit against Secretary.

Reversed and remanded with instructions.

**Procedural Posture(s):** On Appeal; Motion to Dismiss.

West Headnotes (4)

[1]   **Federal Courts**  Immunity
      Court of Appeals reviews a sovereign immunity determination de novo.

[2]   **Federal Courts**  Suits for injunctive or other prospective or equitable relief; Ex parte Young doctrine
      **Federal Courts**  Agencies, officers, and public employees
      Ex parte Young exception to state sovereign immunity allows a federal court to enjoin a state official from enforcing state laws that conflict with federal law. U.S. Const. Amend. 11.

[3]   **Federal Courts**  Suits for injunctive or other prospective or equitable relief; Ex parte Young doctrine
      **Federal Courts**  Agencies, officers, and public employees
      To be sued under Ex parte Young exception to state sovereign immunity, a state official must have some connection to the state law's enforcement and threaten to exercise that authority. U.S. Const. Amend. 11.

[4]   **Federal Courts**  Other particular entities and individuals
      Texas Secretary of State was not sufficiently connected to the enforcement of state law barring counties from operating mobile or pop-up early voting locations, and thus exception of Ex parte Young to state sovereign immunity did not apply to allow suit against Secretary to enjoin enforcement of law; local officials were responsible for administering and enforcing statutes governing days and hours of early voting. U.S. Const. Amend. 11; Tex. Elec. Code Ann. § 85.064.

**\*289**  Appeal from the United States District Court for the Western District of Texas, USDC No. 1:19-CV-1063, Lee Yeakel, U.S. District Judge

**Attorneys and Law Firms**

Marc Erik Elias, Attorney, John Michael Geise, Jyoti Jasrasaria, Uzoma Nkem Nkwonta, Alexi Machek Velez, Perkins Coie, L.L.P., Washington, DC, Amanda Beane, Kevin J. Hamilton, Perkins Coie, L.L.P., Seattle, WA, Chad Wilson Dunn, Esq., Brazil & Dunn, Austin, TX, for Plaintiff - Appellee Texas Democratic Party.

[Marc Erik Elias](), Attorney, [John Michael Geise](), [Jyoti Jasrasaria](), [Uzoma Nkem Nkwonta](), [Alexi Machek Velez](), Perkins Coie, L.L.P., Washington, DC, [Amanda Beane](), [Kevin J. Hamilton](), Perkins Coie, L.L.P., Seattle, WA, for Plaintiffs - Appellees Democratic Senatorial Campaign Committee, Democratic Congressional Campaign Committee, Emily Gilby.

[Renea Hicks](), Law Office of Renea Hicks, Austin, TX, for Plaintiff - Appellee Terrell Blodgett.

[Judd Edward Stone, II](), [Matthew Hamilton Frederick](), Deputy Solicitor General, Office of the Attorney General, Office of the Solicitor General, [Todd Lawrence Disher](), [Patrick K. Sweeten](), Office of the Attorney General of Texas, Special Counsel Unit, Attorney General of Texas, Office of Special Litigation, Austin, TX, for Defendant - Appellant.

Before [Haynes](), [Graves](), and [Willett](), Circuit Judges.

**Opinion**

[Don R. Willett](), Circuit Judge:

Various voters and political organizations sued the Texas Secretary of State seeking to enjoin the enforcement of HB 1888, a state law that bars counties from operating mobile or pop-up early voting locations. The district court denied the Secretary's sovereign immunity defense. We reverse.

I

Texas law generally requires counties to conduct early voting at their main county branch offices.[1] Counties may also conduct early voting at other locations.[2] The state **\*290** statutes classify early voting locations at the main county branch offices as "permanent branch" polling places, while other early voting locations are called "temporary branch" polling places.[3]

---

[1]     [TEX. ELEC. CODE § 85.061.]()

[2]     *Id.* § 85.062.

[3]     *Id.* §§ 85.061(c), 85.062(g).

In 2019, the Texas Legislature passed HB 1888, which requires a county's "temporary branch" early voting locations to be open for at least 8 hours a day on the same days that the county's main "permanent branch" polling place is open, unless the region holding the election has fewer than 1,000 registered voters.[4] As the Secretary explained in an Election Advisory to county officials, HB 1888 banned mobile or pop-up early voting sites.[5]

---

[4]     2019 Tex. Sess. Law Serv. ch. 1085 (West) (codified at [TEX. ELEC. CODE § 85.064]()).

[5]     Tex. Sec'y of State, Election Advisory No. 2019-20 (Oct. 9, 2019).

Before HB 1888, many counties offered pop-up early voting sites near college campuses and senior living facilities. For example, Tarrant County offered temporary early voting locations at the University of Texas at Arlington and Texas Christian University, Williamson County offered one at Southwestern University, and Travis County offered them at Huston-Tillotson University, St. Edward's University, and Austin Community College. Travis County also set up a pop-up early voting location near the Westminster senior living facility in Austin. After HB 1888, counties curtailed the use of temporary early voting locations. For the 2019 elections, Travis County did not offer early voting at the three campuses mentioned above or at the Westminster senior living facility.

In Fall 2019, the Texas Democratic Party, the Democratic Senatorial Campaign Committee, the Democratic Congressional Campaign Committee, the Texas Young Democrats, the Texas College Democrats, Southwestern University student Emily Gilby, and Westminster resident Terrell Blodgett sued the Secretary of State, alleging that HB 1888 violates the First Amendment, the Equal Protection Clause of the Fourteenth Amendment, the Twenty-Sixth Amendment, and the Americans with Disabilities Act. They sought declaratory relief and an injunction prohibiting the Secretary from implementing or enforcing HB 1888.

The Secretary moved to dismiss on the grounds that sovereign immunity barred the suit, that Plaintiffs lacked standing, and that Plaintiffs failed to state a claim. The district court dismissed the ADA claim but denied the motion in all other respects. The Secretary timely appealed from the denial of sovereign immunity.

II

**[1]** The plaintiffs asserted subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343, and we always have jurisdiction to determine our own jurisdiction.[6] We have appellate jurisdiction over this interlocutory appeal under 28 U.S.C. § 1291 and the collateral-order doctrine.[7] We review the sovereign immunity determination de novo.[8]

---

6   See *Brownback v. King*, ––– U.S. ––––, 141 S. Ct. 740, 750, ––– L.Ed.2d –––– (2021).

7   *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 141, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993).

8   *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019).

---

III

**[2]** **[3]** **[4]** The sole issue on appeal is whether this case may proceed under the *Ex parte Young* exception to state sovereign **\*291** immunity.[9] *Ex parte Young* allows a federal court to enjoin a state official from enforcing state laws that conflict with federal law.[10] To be sued under *Ex parte Young*, the state official must "have 'some connection' to the state law's enforcement and threaten to exercise that authority."[11]

---

9    209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

10   *Air Evac EMS, Inc. v. Tex. Dep't of Ins.*, 851 F.3d 507, 515–16 (5th Cir. 2017).

11   *Id.* at 517 (quoting *Ex parte Young*, 209 U.S. at 157, 28 S.Ct. 441).

---

Applying our precedents in this area is no easy task. We have not outlined a clear test for when a state official is sufficiently connected to the enforcement of a state law so as to be a proper defendant under *Ex parte Young*.[12] But we are not writing on a blank slate: A previous panel held that the Secretary lacks a sufficient connection to the enforcement of Texas's early voting statutes. In *Mi Familia Vota v. Abbott*, voters sued the Governor and the Secretary of State over early voting protocols during the COVID-19 pandemic.[13] Relevant here, they challenged the application and enforcement of Texas Election Code § 85.062, which governs the establishment of temporary branch early voting locations, and § 85.063, which governs the days and hours of voting at permanent branch early voting locations.[14] The panel concluded that the Secretary "has no connection to the enforcement of ... Texas Election Code §§ 85.062–85.063" because local officials are responsible for administering and enforcing those statutes.[15] Indeed, by statute, a local official (typically the county clerk or city secretary) serves as the "early voting clerk" responsible for conducting the early voting in each election.[16] And the local governing body of the political subdivision (typically the county commissioner's court) is tasked with establishing temporary branch polling places.[17] The Secretary plays no role.[18]

---

12   *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 179 (5th Cir. 2020) ("This circuit has not spoken with conviction about all relevant details of the 'connection' requirement."); *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 400 (5th Cir. 2020) ("The precise scope of the 'some connection' requirement is still unsettled ...."); *City of Austin*, 943 F.3d at 999 ("What constitutes a sufficient 'connection to [ ] enforcement' is not clear from our jurisprudence.").

13   977 F.3d 461, 463–66 (5th Cir. 2020).

14   *Id.* at 465–66.

15   *Id.* at 468.

16   §§ 83.001, 83.002, 83.005.

17   § 85.062(a)

18   The record in this case confirms what the statutes already make clear. In her declaration, the Travis County Clerk attested that she is "responsible for planning and implementing elections within the County, which includes planning for and designating early voting locations throughout the County, subject to approval of all such locations by the Travis County Commissioner's Court" and that "[i]n Texas, the counties are responsible for the costs of running an early voting program."

---

*Mi Familia Vota* controls here. If the Secretary has no connection to the enforcement of § 85.062 or § 85.063, then it follows that she has no connection to the enforcement of HB 1888, as codified in the neighboring § 85.064, which governs the days and hours of voting at temporary branch locations.

Because the Secretary is not sufficiently connected to the enforcement of HB 1888, we need not consider her argument that Plaintiffs are seeking improper relief under *Ex parte Young*.

IV

We REVERSE the district court's denial of sovereign immunity and REMAND **\*292** from this interlocutory appeal with instructions to dismiss.

**All Citations**

997 F.3d 288

---

    © 2021 Thomson Reuters. No claim to original U.S. Government Works.

# Exhibit B

2021 WL 2310010
Only the Westlaw citation is currently available.
This case was not selected for
publication in West's Federal Reporter.
See Fed. Rule of Appellate Procedure 32.1
generally governing citation of judicial decisions
issued on or after Jan. 1, 2007. See also
U.S.Ct. of App. 5th Cir. Rules 28.7 and 47.5.
United States Court of Appeals, Fifth Circuit.

TEXAS DEMOCRATIC PARTY; DEMOCRATIC
SENATORIAL CAMPAIGN COMMITTEE;
DEMOCRATIC CONGRESSIONAL
v.
RUTH R. HUGHS, in her official capacity as the
Texas Secretary of State, Defendant—Appellant.

|
June 4, 2021

Appeal from the United States District Court for the Western District of Texas

USDC No. 5:20-CV-8

Before [Haynes](), [Graves](), and [Willett](), Circuit Judges.

**Opinion**

PER CURIAM:*

 *1  The Texas Secretary of State issued a press release that allegedly stated that voter registration applications require a wet signature (the "wet signature rule"). Plaintiffs—the Texas Democratic Party, the Democratic Senatorial Campaign Committee, and the Democratic Congressional Campaign Committee—sued the Secretary in her official capacity, alleging that the Secretary's alleged wet signature rule violates federal law. We hold that, given the binding precedent we have in this area, we must conclude that the Secretary lacks sufficient connection to enforcement of the alleged wet signature rule for the *Ex parte Young* exception to state sovereign immunity to apply. Accordingly, we REVERSE the district court's denial of the Secretary's sovereign immunity defense and REMAND with instructions to dismiss for lack of subject matter jurisdiction.[1]

---

[1] We also DENY the Secretary's motion to strike the documents in Plaintiffs' addendum as moot.

**I. Background**

The Secretary argues that in Texas, the responsibility of reviewing voter registration applications is divided between her and local county registrars but falls mostly on the local county registrars. We note that the Secretary indisputably holds high-level responsibilities: she applies and interprets the state's Election Code, assists and advises all election authorities regarding the Code, and may take appropriate action against those authorities if they abuse their duties. [Tex. Elec. Code Ann. §§ 31.003](), .004(a), .005. But there are also statutes imputing certain responsibilities on the county registrars, such as the actual registering of voters. In particular, they receive and review voter registration applications for compliance with the Election Code, which, among other requirements, provides that an application must be "in writing and signed by the applicant." *Id.* §§ 13.002(b), .071. The county registrars accept those applications that comply and reject those that do not. *Id.* § 13.072.

To assist voters in completing their voter registration applications in compliance with the Election Code, an organization seeking to increase voter turnout in Texas released a smartphone application in 2018. Through that app, a voter registration applicant could submit his or her information, which would then be auto-populated into a paper voter registration form. To satisfy the signature requirement, the applicant would sign a piece of paper, take a picture of the signature, and upload that picture to the app. The organization then affixed the applicant's signature to the application form and sent a copy of the application to the applicant's county registrar. Many voters in Texas registered to vote through this app.

Then, five days before the voter registration deadline, the Secretary issued a press release "remind[ing] all eligible Texas voters that online voter registration is not available in the State of Texas." Press Release, Texas Secretary of State, Secretary Pablos Reminds Texans To Exercise Caution When Registering To Vote (Oct. 4, 2018).[2] The press release allegedly required all voter registration applications to include an original, wet signature and made applications submitted through the app invalid. The Travis County registrar allegedly announced that he would not follow the wet signature rule, but reversed course the following day, and rejected hundreds of applications submitted without a wet signature. Several

other county registrars allegedly followed the Secretary's wet signature rule.

2    The Secretary who issued the release was actually a predecessor to the current one, but the current Secretary has not rescinded the press release addressed here; it is available at: https://www.sos.texas.gov/about/newsreleases/2018/100418.shtml.

**\*2** Plaintiffs, who all expended resources to promote and employ the app, sued the Secretary in her official capacity, alleging that the Secretary's alleged wet signature rule violates the United States Constitution and the Civil Rights Act of 1964 and seeking declaratory relief and an injunction. The Secretary moved to dismiss the complaint, arguing in part that the court lacked jurisdiction based on state sovereign immunity. The district court denied the motion, concluding, as relevant here, that the *Ex parte Young* exception to sovereign immunity applied. The Secretary timely appealed the denial of sovereign immunity under the collateral order doctrine.

## II. Jurisdiction & Standard of Review

Plaintiffs asserted jurisdiction under 28 U.S.C. §§ 1331, 1343, and we have jurisdiction to determine our own jurisdiction. *Brownback v. King*, 141 S. Ct. 740, 750 (2021). We review the district court's jurisdictional determination of sovereign immunity de novo. *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 393 (5th Cir. 2015).

## III. Discussion

*Ex parte Young* provides an exception to the general rule preventing private suits against state officials in their official capacity in federal court.³ *Id.* at 393–94 (referring to *Ex parte Young*, 209 U.S. 123, 155–56 (1908)). For this exception to apply, the state official must have "some connection with the enforcement of the act" in question. *Ex parte Young*, 209 U.S. at 157. We look at the face of the complaint to determine whether there is a sufficient connection.⁴ *City of Austin v. Paxton*, 943 F.3d 993, 998 (5th Cir. 2019), *cert. denied*, 141 S. Ct. 1047 (2021) (mem.).

3    The other exceptions to state sovereign immunity —state waiver and congressional abrogation—are not applicable here. *See NiGen*, 804 F.3d at 393–94. It is undisputed that Texas has not consented to this suit. Also, Congress has not abrogated sovereign immunity for Civil Rights Act claims, as that Act does not provide "unequivocal statutory language" abrogating state sovereign immunity. *Allen v. Cooper*, 140 S. Ct. 994, 1000 (2020); *cf.* 52 U.S.C. § 10101(a)(2)(B).

4    As a result, even if we were to accept Plaintiffs' addendum to their brief, it is irrelevant for our *Ex parte Young* analysis.

We have a series of binding precedents addressing the question of when a state official can be sued under the *Ex parte Young* exception—though they do not provide as much clarity as we would prefer. *See Tex. Democratic Party v. Abbott*, 978 F.3d 168, 179 (5th Cir. 2020) (observing that our opinions have ranged from requiring a heightened "special relationship" to a mere "scintilla" of enforcement by the relevant state official), *cert. denied*, 141 S. Ct. 1124 (2021) (mem.).

Notwithstanding some differences in our broad-strokes articulation of the "some connection" requirement, the precedents distill three rules that bind us in this case. First, whatever the merits of this conclusion, our case law is clear that it is not enough that the state official was merely the but-for cause of the problem that is at issue in the lawsuit. *Id.* at 175, 181 (holding that the Attorney General of Texas, whose letter ordering public officials to refrain from advising voters who feared COVID-19 to vote by mail, lacked a sufficient connection to enforcement for *Ex parte Young*).⁵ Second, where a statute is being challenged, our precedents necessitate the state official to "have the requisite connection to the enforcement of the particular statutory provision that is the subject of the litigation"—in other words, a provision-by-provision analysis is required. *Id.* at 179. Third, in the particular context of Texas elections, we have held that the Secretary's role varies, so we must identify the Secretary's specific duties within the particular statutory provision. *See id.* at 179–80 (observing that for mail-in ballots, the Secretary and local early voting clerks divide responsibilities); *id.* at 180 (acknowledging that the Secretary's general duties under the Texas Election Code §§ 31.003–.004 are an insufficient connection under *Ex parte Young*).

5    A reasonable person could argue that it makes little sense to be unable to sue the official who caused the problem in question, but we are bound to follow the

relevant precedents and, therefore, do not address this point further.

**\*3** The question presented today is whether, given the precedents we are bound by in this area, the Secretary has a sufficient connection to enforce the alleged wet signature rule when county registrars are the ones who review voter registration applications. In light of applying the precedents enacting the three rules articulated above, we are bound to conclude that the answer is "no."

Plaintiffs focus on the Secretary's press release, arguing that it compelled county registrars to reject voter registration applications that lacked wet signatures. However, there is no dispositive difference between the Secretary's press release in this case and the Texas Attorney General's letter to local officials in *Texas Democratic Party*. *Id.* at 175. There, the Attorney General issued a letter, which explained that the Election Code plainly provided that fear of contracting COVID-19 did not qualify as a disability for purposes of receiving a mail-in ballot, ordered local officials to refrain from advising voters who feared contracting COVID-19 from voting by mail, and warned local officials that issuing such advice would subject them to criminal liability. *Id.* We held that the letter did not provide a sufficient connection to enforcement of the Election Code because it (1) was not sent to the plaintiffs, (2) did not make a specific threat or indicate that enforcement was forthcoming, and (3) did not state that the plaintiffs had violated any specific law. *Id.* at 181. All those factors come out the same way here. Accordingly, *Texas Democratic Party* binds us to conclude that the Secretary's alleged wet-signature-rule press release to the general public does not provide a sufficient connection to actual enforcement for *Ex parte Young* to apply to the Secretary.

Plaintiffs offer two additional reasons for why the Secretary has a sufficient connection for *Ex parte Young* to apply, but *Texas Democratic Party* forecloses those arguments.[6]

[6] Plaintiffs also argue that the Secretary is sufficiently connected to the enforcement of the alleged wet signature rule because the Secretary provides training on election law to certain officials, but they refer only to sections of the Texas Election Code applying to volunteer deputy registrars, rather than the county registrars who actually reject the applications. *See* TEX. ELEC. CODE ANN. §§ 13.047, .048; *see also id.* §§ 13.039(a), .042 (noting that a volunteer deputy registrar has a limited duty of reviewing a voter registration application for completeness and then passing complete applications to the county registrars for review). Those provisions fail to show that the Secretary has the connection required by our precedent to the enforcement of the alleged wet signature rule.

First, Plaintiffs argue that Texas Election Code § 13.121(a), which requires the Secretary to design the official voter registration application form, provides a sufficient connection to enforcing the alleged wet signature rule on those forms. But in their complaint in the district court, Plaintiffs did not plead that the voter registration application form designed by the Secretary specifically required a wet signature. *Cf. id.* at 179–80 (holding that the Secretary had a sufficient connection to enforce an age-based absentee-voting provision in mail-in ballot applications because the Texas Election Code required the Secretary to design the application form for mail-in ballots and the Secretary had designed that form to require applicants to indicate whether they were entitled to an absentee ballot based on age). Thus, as pleaded, there is no issue with the design of the voter registration application form.

**\*4** Second, Plaintiffs argue that Texas Election Code § 31.005(a)–(b), which authorizes the Secretary to "take appropriate action to protect the voting rights of the citizens" and to order local officials to correct any offending conduct, provides sufficient connection to enforcing the alleged wet signature rule on the county registrars. But, again, Plaintiffs did not plead that the Secretary took such action or even that the Secretary threatened to do so. *See id.* at 181 (observing that our precedent requires the necessary connection to be "not merely the general duty to see that the laws of the state are implemented, but the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty" (internal quotation marks and citation omitted)). The most that Plaintiffs pleaded was that the Travis County registrar "reversed course" and rejected voter registration applications submitted without a wet signature—but they did not allege that the registrar did so under threat from the Secretary, or anything similar.

We therefore hold that our precedent requires us to conclude that the Secretary lacks sufficient connection to the enforcement of the alleged wet signature rule for the *Ex parte Young* exception to apply. Accordingly, we REVERSE the district court's denial of sovereign immunity and REMAND from this interlocutory appeal with instructions to dismiss for lack of subject matter jurisdiction.[7] We also DENY

the Secretary's motion to strike the documents in Plaintiffs' addendum as moot.

[7]  Because we hold that the Secretary lacked a sufficient connection to the enforcement of the challenged statute, we need not, and do not, address whether Plaintiffs requested the type of relief required under *Ex parte Young*.

**All Citations**

--- Fed.Appx. ----, 2021 WL 2310010

---

**End of Document**  © 2021 Thomson Reuters. No claim to original U.S. Government Works.